IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

JANUARY 2019 TERM

_____

No. 17-0994

_____

CHRISTOPHER J.,
Petitioner

V.

DONNIE AMES, SUPERINTENDENT, MOUNT OLIVE
CORRECTIONAL COMPLEX,
Respondent

FILED

June 10, 2019

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

Appeal from the Circuit Court of Berkeley County
Honorable Michael D. Lorensen, Judge
Civil Action No. 15-C-48

AFFIRMED IN PART; REVERSED IN PART

_____

Submitted: April 9, 2019
Filed: June 10, 2019

S. Andrew Arnold, Esq.                    Patrick Morrisey, Esq.
Daniel J. Kirkland, Esq.                  Attorney General
Arnold & Bailey, PLLC                     Caleb A. Ellis, Esq.
Charles Town, West Virginia               Assistant Attorney General
Attorney for Petitioner                   Robert L. Hogan, Esq.
                                          Deputy Attorney General
                                          Charleston, West Virginia
                                          Attorneys for Respondent

JUSTICE HUTCHISON delivered the Opinion of the Court.

JUSTICES ARMSTEAD and JENKINS concur in part; and dissent in part; and reserve the right to file separate opinions.

SYLLABUS BY THE COURT

1.     "The presumption is that a statute is intended to operate prospectively, and not retrospectively, unless it appears, by clear, strong and imperative words or by necessary implication, that the Legislature intended to give the statute retroactive force and effect." Syllabus point 4, *Taylor v. State Comp. Com'r*, 140 W. Va. 572, 86 S.E.2d 114 (1955).

2.     "A statute is enacted as a whole with a general purpose and intent, and each part should be considered in connection with every other part to produce a harmonious whole. Words and clauses should be given a meaning which harmonizes with the subject matter and the general purpose of the statute. The general intention is the key to the whole and the interpretation of the whole controls the interpretation of its parts." Syllabus point 1, *State ex rel. Holbert v. Robinson*, 134 W. Va. 524, 59 S.E.2d 884 (1950).

3.     "That which is necessarily implied in a statute, or must be included in it in order to make the terms actually used have effect, according to their nature and ordinary meaning, is as much a part of it as if it had been declared in express terms." Syllabus point 4, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975).

i

4.     "In the interpretation of statutory provisions the familiar maxim *expressio unius est exclusio alterius*, the express mention of one thing implies the exclusion of another, applies." Syllabus point 3, *Manchin v. Dunfee*, 174 W. Va. 532, 327 S.E.2d 710 (1984).

5.     The parole eligibility requirement for juveniles under W. Va. Code § 61-11-23(b) (2018), of the Juvenile Sentencing Reform Act, is to be applied retroactively to juveniles sentenced as adults before the statute's effective date of June 6, 2014.

6.     "In order to obtain a new trial on a claim that the prosecutor presented false testimony at trial, a defendant must demonstrate that (1) the prosecutor presented false testimony, (2) the prosecutor knew or should have known the testimony was false, and (3) the false testimony had a material effect on the jury verdict." Syllabus point 2, *State ex rel. Franklin v. McBride*, 226 W. Va. 375, 701 S.E.2d 97 (2009).

7.     "Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity, thereby violating West Virginia Constitution, Article III, Section 5 that prohibits a penalty that is not proportionate to the character and degree of an offense." Syllabus point 5, *State v. Cooper*, 172 W. Va. 266, 304 S.E.2d 851 (1983).

8.	"While our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence." Syllabus point 4, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981).

**Hutchison, Justice**:

This appeal arises from a habeas corpus proceeding and was brought by Christopher J. (hereinafter "Petitioner") from the October 6, 2017, order of the Circuit Court of Berkeley County.[1] In this appeal the Petitioner argues that the circuit court erred in finding (1) that he could not be considered for parole under W. Va. Code § 61-11-23(b); (2) that no false and perjured testimony was presented at his trial; and (3) that his sentence was not disproportionate to the crimes he committed. The State argues that the issues were properly resolved by the circuit court and should be affirmed.[2] Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we affirm in part and reverse in part.

---

[1] Consistent with our long-standing practice in cases involving sensitive facts, we use the initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 256 n.1, 773 S.E.2d 20, 22 n.1 (2015).

[2] When this case was filed the Respondent was Ralph Terry, Acting Warden of Mount Olive Correctional Complex. However, during the pendency of the appeal the acting warden was replaced by Donnie Ames, Superintendent (the title of the office also changed) of Mount Olive Correctional Complex. Accordingly, pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure, we substitute Superintendent Ames as the Respondent herein. *See* W. Va. R. App. P. 41(c) ("When a public officer is a party to an appeal or other proceeding in the Supreme Court in his official capacity and during its pendency ... ceases to hold office, the action does not abate and his successor is automatically substituted as a party.").

1

# I.

## FACTUAL AND PROCEDURAL HISTORY

The underlying facts of this case are not in dispute.[3]  The record in this matter shows that in 2007, the mother of two infant boys asked the Petitioner to babysit them.[4] The Petitioner was sixteen years old at the time.  While babysitting the two children, the Petitioner sexually abused both of them.  The two children did not report the sexual abuse to their parents until 2012.   After the children's parents informed the police of the allegations, the Petitioner was indicted on two charges of sexual assault in the first degree, and two charges of sexual abuse by a parent, guardian, custodian, or person in a position of trust.

The Petitioner was tried for the crimes as an adult in 2013.  The jury acquitted Petitioner of one count of sexual assault in the first degree, however, the jury found him guilty of the second count of sexual assault in the first degree and the two counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust. The circuit court sentenced Petitioner to an aggregate sentence of thirty-five to seventy-five years of

---

[3] For a complete discussion of the facts of the case *see State v. Jensen*, No. 13-1088, 2014 WL 2681229 (W. Va. June 13, 2014) (Memorandum Decision).

[4] One of the infants, W.T., was four years old and the other, J.T., was three years old at the time.

2

incarceration. The Petitioner was further sentenced to fifty years of supervised release and was required to register as a sexual offender for his lifetime.

The Petitioner appealed the conviction to this Court. In 2014, while the appeal was still pending, the Legislature enacted the Juvenile Sentencing Reform Act, W. Va. Code § 61-11-23.[5] This Court entered a Memorandum Decision affirming the conviction on June 13, 2014, several days after the effective date of the Juvenile Sentencing Reform Act, June 6, 2014. The Petitioner subsequently filed this habeas corpus proceeding in circuit court.[6] The circuit court entered an order on October 6, 2017, that found the Petitioner failed to set out any grounds that warranted relief.[7] This appeal from the habeas proceeding followed.

---

[5] As part of the Juvenile Sentencing Reform Act the legislature also enacted W. Va. Code § 62-12-13b (special parole considerations for juveniles).

[6] It appears that the circuit court did not hold an omnibus hearing. Instead, the circuit court resolved the habeas petition on the parties' briefs and the record. We have recognized that "[a] court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief." Syl. pt. 1, *Perdue v. Coiner*, 156 W. Va. 467, 194 S.E.2d 657 (1973). *See Messer v. Ballard*, No. 15-0423, 2016 WL 1735247, at *4 (W. Va. Apr. 29, 2016) (Memorandum Decision) ("it is in the circuit court's discretion whether to conduct an omnibus hearing after reviewing the record from underlying proceeding.").

[7] The factual setting of the circuit court's ruling is set out in the Discussion section of the opinion.

## II.

## STANDARD OF REVIEW

In this case, the Petitioner challenges the circuit court's order denying his habeas petition. We review the circuit court's order under the following standard:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a de novo review.

Syl. pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006). With this standard in mind, we now address the issues presented.

## III.
## DISCUSSION

The Petitioner has set out three assignments of error. We will review each assignment of error separately below.[8]

---

[8] The issues raised by the Petitioner are not briefed in the context of the usual habeas claim of ineffective assistance of counsel. Therefore, our discussion will not involve an ineffective assistance of counsel analysis. *See* Syl. pt. 5, *State v. Miller*, 194 W. Va. 3, 6, 459 S.E.2d 114, 117 (1995) ("In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.").

## A. Retroactivity of W.Va. Code § 61-11-23(b)

The first issue raised by the Petitioner is that the circuit court erred in concluding that the Legislature did not intend for W. Va. Code § 61-11-23(b) of the Juvenile Sentencing Reform Act to be applied retroactively. The State argues that the circuit court's ruling was correct and that there is nothing in the text of the statute which shows that the Legislature intended for the statute to operate retroactively. In order to fully understand the Juvenile Sentencing Reform Act, some discussion is in order regarding the trilogy of United States Supreme Court decisions that prompted legislative action in this area.

The first case in the trilogy was *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005). The defendant in *Roper* was convicted of capital murder by the state of Missouri and sentenced to death. When the defendant committed the murder, he was seventeen years old. After exhausting his direct appeals, the defendant filed a habeas petition in state court arguing that the execution of individuals under 18 years of age at the time they committed their capital crimes, is prohibited by the Eighth Amendment of the United States Constitution as applied to the states through the Fourteenth Amendment. The Missouri Supreme Court agreed with the defendant and vacated his death sentence. The state appealed to the United States Supreme Court. In *Roper*, the Supreme Court held that the Eighth and Fourteenth Amendments to the Constitution prohibit a death penalty sentence for persons who committed capital crimes as juveniles.

5

The decision affirming the lower court was based, in part, on a recognition of three general differences between juveniles and adults. The Supreme Court reasoned as follows:

> Three general differences between juveniles under 18 and adults demonstrate that juvenile offenders cannot with reliability be classified among the worst offenders. First, as any parent knows and as the scientific and sociological studies respondent and his amici cite tend to confirm, [a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions. It has been noted that adolescents are overrepresented statistically in virtually every category of reckless behavior. In recognition of the comparative immaturity and irresponsibility of juveniles, almost every State prohibits those under 18 years of age from voting, serving on juries, or marrying without parental consent.
>
> The second area of difference is that juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure. This is explained in part by the prevailing circumstance that juveniles have less control, or less experience with control, over their own environment.
>
> The third broad difference is that the character of a juvenile is not as well formed as that of an adult. The personality traits of juveniles are more transitory, less fixed.
>
> These differences render suspect any conclusion that a juvenile falls among the worst offenders. The susceptibility of juveniles to immature and irresponsible behavior means their irresponsible conduct is not as morally reprehensible as that of an adult. Their own vulnerability and comparative lack of control over their immediate surroundings mean juveniles have a greater claim than adults to be forgiven for failing to escape negative influences in their whole environment.

*Roper*, 543 U.S. at 569-570, 125 S. Ct. at 1195 (internal quotations and citations omitted).

6

The Supreme Court expanded its *Roper* analysis in *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), to persons sentenced to life without parole for non-homicide crimes committed when they were juveniles. The defendant in *Graham* was charged by the state of Florida with armed burglary and attempted armed robbery. The defendant was sixteen years old at the time of the crimes. The defendant pled guilty to both charges. The trial court accepted the plea but deferred sentencing the defendant and placed him on probation. The defendant subsequently violated probation and was sentenced under the plea to life imprisonment for the armed burglary and 15 years for the attempted armed robbery. After the defendant exhausted his direct appeal in state courts, he filed a petition for certiorari with the United States Supreme Court. Consistent with its reasoning in *Roper*, the Supreme Court granted relief to the defendant in *Graham*, in part, based upon the following:

> No recent data provide reason to reconsider the Court's observations in *Roper* about the nature of juveniles. As petitioner's amici point out, developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds. For example, parts of the brain involved in behavior control continue to mature through late adolescence. Juveniles are more capable of change than are adults, and their actions are less likely to be evidence of irretrievably depraved character than are the actions of adults. It remains true that [f]rom a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed.

> \*\*\*

> In sum, penological theory is not adequate to justify life without parole for juvenile nonhomicide offenders. This determination; the limited culpability of juvenile nonhomicide offenders; and the severity of life without parole sentences all lead to the conclusion that

7

> the sentencing practice under consideration is cruel and unusual. This Court now holds that for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole. This clear line is necessary to prevent the possibility that life without parole sentences will be imposed on juvenile nonhomicide offenders who are not sufficiently culpable to merit that punishment. Because [t]he age of 18 is the point where society draws the line for many purposes between childhood and adulthood, those who were below that age when the offense was committed may not be sentenced to life without parole for a nonhomicide crime.

*Graham*, 560 U.S. at 68-75, 130 S. Ct. at 2026-2030 (internal quotations and citations omitted).

In *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), the Supreme Court extended its *Roper/Graham* analysis to persons who committed homicides as juveniles and sentenced to life in prison. The decision in *Miller* involved two consolidated criminal cases. In both cases, the defendants were convicted of capital murder and sentenced to life in prison without the possibility of parole.[9] At the time of the murders, both juveniles were 14 years old. In the consolidated appeals to the Supreme Court, the defendants argued that a mandatory sentence of life imprisonment without parole, for crimes committed when they were under the age of 18, violated the Eighth Amendment's prohibition on cruel and unusual punishments. The Supreme Court agreed with the defendants as follows:

> The cases before us implicate two strands of precedent reflecting our concern with proportionate punishment. The first has adopted

---

[9] One juvenile was convicted by the state of Alabama and the second juvenile was convicted by the state of Arkansas.

8

categorical bans on sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty…. Several of the cases in this group have specially focused on juvenile offenders, because of their lesser culpability. Thus, *Roper* held that the Eighth Amendment bars capital punishment for children, and *Graham* concluded that the Amendment also prohibits a sentence of life without the possibility of parole for a child who committed a nonhomicide offense. *Graham* further likened life without parole for juveniles to the death penalty itself, thereby evoking a second line of our precedents. In those cases, we have prohibited mandatory imposition of capital punishment, requiring that sentencing authorities consider the characteristics of a defendant and the details of his offense before sentencing him to death. Here, the confluence of these two lines of precedent leads to the conclusion that mandatory life-without-parole sentences for juveniles violate the Eighth Amendment.

… *Roper* and *Graham* establish that children are constitutionally different from adults for purposes of sentencing. Because juveniles have diminished culpability and greater prospects for reform … they are less deserving of the most severe punishments. Those cases relied on three significant gaps between juveniles and adults. First, children have a lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking. Second, children are more vulnerable ... to negative influences and outside pressures, including from their family and peers; they have limited contro[l] over their own environment and lack the ability to extricate themselves from horrific, crime-producing settings. And third, a child's character is not as well formed as an adult's; his traits are less fixed and his actions less likely to be evidence of irretrievabl[e] depravity.

*Miller*, 567 U.S. at 470-471, 132 S. Ct. at 2463–1464 (internal quotations and citations omitted).[10]

---

[10] The decision in *Miller* was made retroactive in *Montgomery v. Louisiana*, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016).

Our Legislature responded to *Miller* and its progeny by enacting the Juvenile Sentencing Reform Act of 2014. The original draft of the Juvenile Sentencing Reform Act set out the following legislative findings:[11]

> [1] As stated by the United States Supreme Court in Miller v. Alabama, 132 S. Ct. 2455 (2012), "only a relatively small proportion of adolescents" who engage in illegal activity "develop entrenched patterns of problem behavior" and that "developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds," including "parts of the brain involved in behavior control."
>
> [2] Further, the U.S. Supreme Court noted that children "are more vulnerable to negative influences and outside pressures, including from their family and peers," and "they have limited control over their own environment and lack the ability to extricate themselves from horrific, crime-producing settings."
>
> [3] The U.S. Supreme Court lastly emphasized, "the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes."
>
> [4] Youthfulness both lessens a juvenile's moral culpability and enhances the prospect that, as a youth matures into an adult and neurological development occurs, these individuals can become contributing members of society.
>
> [5] Children are constitutionally different from adults and criminal sentences must take their status as children, and the accompanying emotional, psychological and developmental differences into account.

2014 West Virginia House Bill No. 4210, West Virginia Eighty-First Legislature - Regular Session, 2014.

---

[11] These findings were not included in the Juvenile Sentencing Reform Act that was ultimately enacted into law.

10

In responding specifically to the decision in *Miller*, through enactment of the Juvenile Sentencing Reform Act, the Legislature provided greater protections to juveniles than *Miller* required. In W. Va. Code § 61-11-23(a), the Legislature codified *Miller* as follows:

> (a) Notwithstanding any other provision of law to the contrary, a sentence of life imprisonment without the possibility of parole may not be imposed on a person who:
>
> (1) Is convicted of an offense punishable by life imprisonment; and
>
> (2) Was less than 18 years of age at the time the offense was committed.

In W. Va. Code § 61-11-23(b) the Legislature extended greater protection to juveniles than *Miller* required as follows:

> a person who is convicted of one or more offenses for which the sentence or any combination of sentences imposed is for a period that renders the person ineligible for parole until he or she has served more than 15 years shall be eligible for parole after he or she has served 15 years if the person was less than 18 years of age at the time each offense was committed.

It is the latter provision that the Petitioner asks this Court to apply retroactively. We turn now to a discussion of that provision.

To begin, we have long recognized that "[t]he presumption is that a statute is intended to operate prospectively, and not retrospectively, unless it appears, by clear, strong and imperative words or by necessary implication, that the Legislature intended to give the statute retroactive force and effect." Syl. pt. 4, *Taylor v. State Comp. Com'r*, 140 W. Va. 572, 86 S.E.2d 114 (1955). *See* Syl. pt. 4, *Martinez v. Asplundh Tree Expert Co.*, 239 W. Va. 612, 803 S.E.2d 582 (2017); W. Va. Code § 2-2-10(bb) (2017) ("A statute is

11

presumed to be prospective in its operation unless expressly made retrospective."). What is important to understand about syllabus point 4 of *Taylor* is that it sets out two approaches to determining whether a statute is to be applied retroactively. First, a determination of legislative intent can be made by examining the text of the statute to see if there are "clear, strong and imperative words" in the statute that show the legislative intent for retroactive application of a statute. It is quite evident, and we summarily find, that the text of W. Va. Code § 61-11-23(b) does not set out any "clear, strong and imperative words" showing a legislative intent for the provision to apply retroactively. Consequently, we proceed to the second analytical tool under *Taylor*.

The second manner in which syllabus point 4 of *Taylor* instructs that the legislative intent on retroactivity can be determined is if "it appears … by necessary implication." In our analysis of W.Va. Code § 61-11-23(b) under *Taylor's* second prong we are guided by the rules of statutory construction that require courts to give meaning to all provisions in a statutory scheme.

> A statute is enacted as a whole with a general purpose and intent, and each part should be considered in connection with every other part to produce a harmonious whole. Words and clauses should be given a meaning which harmonizes with the subject matter and the general purpose of the statute. The general intention is the key to the whole and the interpretation of the whole controls the interpretation of its parts.

Syl. pt. 1, *State ex rel. Holbert v. Robinson*, 134 W. Va. 524, 59 S.E.2d 884 (1950). *See* Syl. pt. 2, *Smith v. State Workmen's Comp. Com'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975) ("In ascertaining legislative intent, effect must be given to each part of the statute and to

12

the statute as a whole so as to accomplish the general purpose of the legislation."). Moreover, we have recognized that

> A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith.

Syl. pt. 5, *State v. Snyder*, 64 W. Va. 659, 63 S.E. 385 (1908). Consequently, "[w]here a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made." Syl. pt. 2, *Newhart v. Pennybacker*, 120 W. Va. 774, 200 S.E. 350 (1938). To that end, "[t]hat which is necessarily implied in a statute, or must be included in it in order to make the terms actually used have effect, according to their nature and ordinary meaning, is as much a part of it as if it had been declared in express terms." Syl. pt. 4, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). Applying these principles of statutory construction reveals the following about the legislative intent regarding the retroactive application of W.Va. Code § 61-11-23(b) under *Taylor's* second prong.

There are four distinct provisions contained in W. Va. Code § 61-11-23. As previously noted, the first provision of the statute, W. Va. Code § 61-11-23(a), provides in full as follows:

13

(a) Notwithstanding any other provision of law to the contrary, a sentence of life imprisonment without the possibility of parole may not be imposed on a person who:

(1) Is convicted of an offense punishable by life imprisonment; and

(2) Was less than 18 years of age at the time the offense was committed.[12]

The second provision of the statute, W.Va. Code § 61-11-23(b), reads in full as follows:

(b) Unless otherwise provided by this code, the provisions of § 62-12-1 et seq. of this code governs the eligibility for parole of a person who is convicted of an offense and sentenced to confinement if he or she was less than 18 years of age at the time the offense was committed, except that a person who is convicted of one or more offenses for which the sentence or any combination of sentences imposed is for a period that renders the person ineligible for parole until he or she has served more than 15 years shall be eligible for parole after he or she has served 15 years if the person was less than 18 years of age at the time each offense was committed.

The third provision found in the statute, W. Va. Code § 61-11-23(c), provides as follows:

(c) In addition to other factors required by law to be considered prior to the imposition of a sentence, in determining the appropriate sentence to be imposed on a person who has been transferred to the criminal jurisdiction of the court pursuant to § 49-4-710 of this code and who has been subsequently tried and convicted of a felony offense as an adult, the court shall consider the following mitigating circumstances:

(1) Age at the time of the offense;

(2) Impetuosity;

(3) Family and community environment;

(4) Ability to appreciate the risks and consequences of the conduct;

(5) Intellectual capacity;

(6) The outcomes of a comprehensive mental health evaluation conducted by a mental health professional licensed to treat adolescents in the State of West Virginia: Provided, That no provision of this section may be construed to require that a comprehensive mental health evaluation be conducted;

---

[12] It should be noted that insofar as W.Va. Code § 61-11-23(a) tracks the constitutional requirements of *Miller*, it necessarily and constitutionally follows that this provision must be applied retroactive because the decision in *Montgomery* held that *Miller* was to be applied retroactively.

(7) Peer or familial pressure;

(8) Level of participation in the offense;

(9) Ability to participate meaningfully in his or her defense;

(10) Capacity for rehabilitation;

(11) School records and special education evaluations;

(12) Trauma history;

(13) Faith and community involvement;

(14) Involvement in the child welfare system; and

(15) Any other mitigating factor or circumstances.

Finally, the fourth provision found in the statute, W. Va. Code § 61-11-23(d), provides as

follows:

> (d)(1) Prior to the imposition of a sentence on a person who has been transferred to the criminal jurisdiction of the court pursuant to § 49-4-710 of this code, and who has been subsequently tried and convicted of a felony offense as an adult, the court shall consider the outcomes of any comprehensive mental health evaluation conducted by an mental health professional licensed to treat adolescents in the State of West Virginia. The comprehensive mental health evaluation must include the following:
>
> (A) Family interviews;
>
> (B) Prenatal history;
>
> (C) Developmental history;
>
> (D) Medical history;
>
> (E) History of treatment for substance use;
>
> (F) Social history; and
>
> (G) A psychological evaluation.
>
> (2) *The provisions of this subsection are only applicable to sentencing proceedings for convictions rendered after the effective date of this section* and do not constitute sufficient grounds for the reconsideration of sentences imposed as the result of convictions rendered after the effective date of this section. (Emphasis added.)

15

A review of the four provisions of W. Va. Code § 61-11-23 reveals that the Legislature expressly provided that the fourth provision, W. Va. Code § 61-11-23(d), was not to be applied retroactively. The fourth provision states in "clear, strong and imperative words" that it is "only applicable to sentencing proceedings for convictions rendered after the effective date of this section." W.Va. Code § 61-11-23(d)(2). The Legislature's express inclusion of a prohibition against the retroactive application of W.Va. Code § 61-11-23(d), "by necessary implication" reveals a legislative intent to exclude a prohibition on the retroactive application of the first three provisions of W. Va. Code § 61-11-23. Any other interpretation would lead to the absurd conclusion that the Legislature *expressly* excluded retroactive application of one of the provisions in the statute, but *implicitly* excluded the retroactive application of the remaining three provisions of the same statute. *See Foster Found. v. Gainer*, 228 W. Va. 99, 109, 717 S.E.2d 883, 893 (2011) ("This Court refuses to afford a statute an illogical construction[.]"); *In re O.P.*, 240 Md. App. 518, 558, 205 A.3d 129, 151 (2019) ("we avoid constructions that are illogical or nonsensical, or that render a statute meaningless.") (internal quotations and citation omitted); *State v. George J.*, 280 Conn. 551, 574-75, 910 A.2d 931, 946 (2006) ("The law prefers rational and prudent statutory construction, and we seek to avoid interpretations of statutes that produce odd or illogical outcomes."). As the United States Supreme Court has recognized, when the Legislature "includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the Legislature] acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 300, 78 L. Ed. 2d 17 (1983) (internal quotation marks and citation

16

omitted). *See National Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 631, 199 L.Ed.2d 501 (2018) ("Courts are required to give effect to [the Legislature's] express inclusions and exclusions, not disregard them."). This conclusion is consistent with our recognition that "[i]n the interpretation of statutory provisions the familiar maxim *expressio unius est exclusio alterius*, the express mention of one thing implies the exclusion of another, applies." Syl. pt. 3, *Manchin v. Dunfee*, 174 W.Va. 532, 327 S.E.2d 710 (1984). We have long recognized that "[t]his doctrine informs courts to exclude from operation those items not included in the list of elements that are given effect expressly by statutory language." *West Virginia Med. Imaging & Radiation Therapy Tech. Bd. of Examiners v. Harrison*, 227 W. Va. 438, 447, 711 S.E.2d 260, 269 (2011) (internal quotation marks and citation omitted). Thus, "[e]xplicit direction for something in one provision, and its absence in a parallel provision, implies an intent to negate it in the second context." *Gibson v. Northfield Ins. Co.*, 219 W. Va. 40, 47, 631 S.E.2d 598, 605 (2005) (internal quotation marks and citation omitted). *See State ex rel. Morrisey v. W. Virginia Office of Disciplinary Counsel*, 234 W. Va. 238, 252, 764 S.E.2d 769, 783 (2014) ("Applying the rule of statutory construction *expressio unius est exclusio alterius* …, it becomes obvious that if the Legislature had intended for prosecutors to have absolute discretionary authority to appoint the Attorney General to assist in prosecuting crimes in general, there would have been no need for setting out the limited appointment authority under W. Va. Code § 5–3–2."); *Young v. Apogee Coal Co., LLC*, 232 W. Va. 554, 562, 753 S.E.2d 52, 60 (2013) ("Critically, we have found that [t]he *expressio unius* maxim is premised upon an assumption that certain omissions from a statute by the Legislature are intentional.")

17

(internal quotation marks and citation omitted); *Banker v. Banker*, 196 W. Va. 535, 546-47, 474 S.E.2d 465, 476-77 (1996) ("It is not for this Court arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted."); *State ex rel. Riffle v. Ranson*, 195 W.Va. 121, 128, 464 S.E.2d 763, 770 (1995) ("*Expressio unius est exclusio alterius* … is a well-accepted canon of statutory construction. If the Legislature explicitly limits application of a doctrine or rule to one specific factual situation and omits to apply the doctrine to any other situation, courts should assume the omission was intentional; courts should infer the Legislature intended the limited rule would not apply to any other situation.") (citations omitted).

Accordingly, we expressly hold that the parole eligibility requirement for juveniles under W. Va. Code § 61-11-23(b) (2018), of the Juvenile Sentencing Reform Act, is to be applied retroactively to juveniles sentenced as adults before the statute's effective date of June 6, 2014. In making this holding, we wish to underscore several matters. First, this Court is quite aware of the heinous nature of the Petitioner's crimes in this case. However, the horrific acts that the Petitioner committed against the victims in this case cannot prevent this Court from carrying out its duty to apply the law equally to all litigants. Our faithful and unbiased inquiry into the legislative intent regarding W. Va. Code § 61-11-23(b), instructs us that the Legislature made no distinction on the types of criminal conduct juveniles engaged in order to benefit from the retroactivity of the statute. Consequently, the Petitioner's egregious crimes are subject to parole consideration under

18

the statute. Second, it is clear that the statute only makes the Petitioner eligible for parole consideration after fifteen years incarceration. Merely being eligible for parole does not mean that the Petitioner will be granted parole. Finally, we note that the Parole Board is entrusted with the decision to grant or deny parole. In making this determination, the Parole Board will be armed with the thorough sentencing record in this case, as well as the record of the Petitioner since his incarceration.[13]

In light of our holding, we reverse that part of the circuit court's order which found W. Va. Code § 61-11-23(b) did not apply retroactively to the Petitioner's sentence.

---

[13] In W. Va. Code § 62-12-13b(b), the Legislature provided guidance to the Parole Board concerning the factors that must be considered in parole decisions, which are at the heart of *Roper*, *Graham*, and *Miller*:

> During a parole hearing involving a person described in subsection (a) of this section, in addition to other factors required by law to be considered by the parole board, the parole board shall take into consideration the diminished culpability of juveniles as compared to that of adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner during incarceration. The board shall also consider the following:
>
> (1) A review of educational and court documents;
>
> (2) Participation in available rehabilitative and educational programs while in prison;
>
> (3) Age at the time of the offense;
>
> (4) Immaturity at the time of the offense;
>
> (5) Home and community environment at the time of the offense;
>
> (6) Efforts made toward rehabilitation;
>
> (7) Evidence of remorse; and
>
> (8) Any other factors or circumstances the board considers relevant.

## B. False and Perjured Trial Testimony

The second issue raised by the Petitioner is that during his trial the State presented false and perjured evidence through the testimony of one of the victims, J.T.[14] The circuit court found that the Petitioner failed to prove that the State presented false and perjured testimony through J.T.[15] We agree.

We have recognized as "a basic principle of law that '[p]rosecutors have a duty to the court not to knowingly encourage or present false testimony.'" *State ex rel. Franklin v. McBride*, 226 W. Va. 375, 378-379, 701 S.E.2d 97, 100-101 (2009), *quoting State v. Rivera*, 210 Ariz. 188, 109 P.3d 83, 89 (2005). As recognized by the United States Supreme Court, "[a]ll perjured relevant testimony is at war with justice, since it may produce a judgment not resting on truth." *In re Michael*, 326 U.S. 224, 227, 66 S. Ct. 78, 79, 90 L. Ed. 30 (1945). *See Nix v. Whiteside*, 475 U.S. 157, 185, 106 S. Ct. 988, 1004, 89 L. Ed. 2d 123 (1986) ("The proposition that presenting false evidence could contribute to … the reliability of a criminal trial is simply untenable."). This Court has held that "[a]lthough it is a violation of due process for the State to convict a defendant based on false evidence, such conviction will not be set aside unless it is shown that the false evidence had a material effect on the jury verdict." Syl. pt. 2, *Matter of Investigation of W. Va. State Police Crime Lab., Serology Div.*, 190 W. Va. 321, 438 S.E.2d 501 (1993).

---

[14] J.T. was eight years old at the time of the trial.

[15] The Petitioner alleges "false and perjured" testimony, but makes no distinction between the terms.

20

*See United States v. Agurs*, 427 U.S. 97, 103, 96 S. Ct. 2392, 2397, 49 L. Ed. 2d 342 (1976) ("the Court has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."). In syllabus point 2 of *McBride* this Court fashioned the following test to determine whether the use of false testimony by a prosecutor warrants a new trial:

> In order to obtain a new trial on a claim that the prosecutor presented false testimony at trial, a defendant must demonstrate that (1) the prosecutor presented false testimony, (2) the prosecutor knew or should have known the testimony was false, and (3) the false testimony had a material effect on the jury verdict.

Under the first prong of the *McBride* test, the Petitioner must show that the prosecutor actually presented false and perjured testimony. The Petitioner's brief sets out the following as the basis for his claim of false and perjured testimony by J.T.:

> In the instant case, the sole evidence presented by the State related to Count's 1 and 2 of the indictment was the testimony of J.T. J.T.'s testimony consisted of the following: (1) Petitioner took J.T. into the bathroom (2) sat J.T on the bathroom sink counter; and (3) placed something over his head. J.T. was unable to provide any independent personal knowledge of what occurred in the bathroom with Petitioner. Rather, J.T. simply stated that, "Michael made us suck his weenie." He could provide no further or specific details regarding the alleged encounter with Petitioner.
>
> … Moreover, J.T. admitted during cross-examination that the reason he knew "Michael made us suck his weenie" was because his brother W.T had told him that is what occurred.[16]

---

[16] We will note, as found by the circuit court, the Petitioner raised this argument in his direct appeal in the context of an insufficiency of evidence claim. *See Jensen*, No. 13-1088, 2014 WL 2681229, at *2 ("He also argues that J.T.'s use of the pronoun 'us,' rather than 'me,' when he said that 'Michael made us suck his weenie' demonstrates that J.T. was

21

Permitting a witness to testify about an issue that he does not have personal knowledge of, does not constitute false and perjured testimony. Such testimony is the basis for an objection,[17] and is grist to the mill of cross-examination in helping to attack the witness's credibility.[18] In fact, that is apparently what happened, to some degree, during the trial because the jury acquitted the Petitioner of the charge of sexual assault in the first degree regarding J.T. Insofar as the Petitioner has failed to present any evidence that the State provided false and perjured testimony through J.T., we need not address the remaining two prongs of the *McBride* test.

---

simply agreeing with W.T.'s version of events."). Ordinarily an argument raised and addressed on direct appeal is not cognizable in a habeas proceeding. *See Bethea v. Ames*, No. 18-0203, 2019 WL 1765880, at *2 (W. Va. Apr. 19, 2019) (Memorandum Decision) ("petitioner had raised that ground in his direct appeal, and such evidentiary rulings are not cognizable in habeas proceedings."); *State ex rel. Mullins v. Rubenstein*, No. 16-0046, 2017 WL 944056, at *2 (W. Va. Mar. 10, 2017) ("As noted above, the circuit court determined that all but one of the assignments of error raised in petitioner's request for habeas relief were previously raised in his direct appeal and were fully and finally adjudicated therein. We agree with the circuit court that these alleged errors were not again reviewable in the habeas proceeding[.]"). However, we exercise our discretion to review this issue on the merits in this appeal only because the circuit court entertained the matter and the State briefed the issue.

[17] *See* W. Va. R. Evid., Rule 602 (need for personal knowledge).

[18] *See* Louis J. Palmer, Jr., et al., *Handbook on Evidence for West Virginia Lawyers*, § 602.04, at 783 (6th Ed. 2015) (As long as the judge determines that the jury could find that the witness perceived the event to which he or she is testifying, the testimony should be admitted, with the factfinder then determining what weight, if any, to give to the testimony. This is the case even though the witness is not positive about what he or she perceived, as long as the witness had an opportunity to observe and did obtain some impressions. While Rule 602 demands first-hand knowledge, it does not require certainty of memory or perfect attention to observation.").

## C. Disproportionate Sentence

The final issue raised by the Petitioner is that his consecutive aggregate sentence of thirty-five to seventy-five years of incarceration is disproportionate to his crimes and violated the Eighth Amendment of the United States Constitution.[19] The Petitioner argues that his sentences should be ordered to run concurrently, even though he "concedes that his sentences were within statutory limits and not based upon an impermissible factor."[20]

This Court "reviews sentencing orders ... under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. pt. 1, in part, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997). In syllabus point five of *State v. Cooper*, 172 W. Va. 266, 304 S.E.2d 851 (1983), we explained:

---

[19] Although the Petitioner cited to the Eighth Amendment in the heading of this assignment of error and in the concluding paragraph, he did not discuss the issue in his brief in the context of the Eighth Amendment, nor did he cite to any supporting case law addressing the Eighth Amendment. Instead, the Petitioner set out the issue in the context of the state constitution. (The circuit court's order also only addressed the issue under the state constitution.) Consequently, we will not address the issue in the context of the Eighth Amendment. *See Fruth v. Powers*, 239 W. Va. 809, 815, 806 S.E.2d 465, 471 (2017) ("We deem errors waived where they are not argued in the briefs, but are merely mentioned in passing."); Syl. pt. 6, *Addair v. Bryant*, 168 W. Va. 306, 284 S.E.2d 374 (1981) ("Assignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived.").

[20] The Petitioner was sentenced to not less than fifteen years nor more than thirty-five years of incarceration for the first degree sexual assault conviction. The Petitioner was further given an indeterminate sentence of not less than ten, nor more than twenty years of incarceration for each of his two convictions for sexual abuse. As indicated, the sentences were ordered to be served consecutively.

23

Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity, thereby violating West Virginia Constitution, Article III, Section 5 that prohibits a penalty that is not proportionate to the character and degree of an offense.

In syllabus point 5 of *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981) we held the following:

In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

In syllabus point 4 of *Wanstreet*, we held that "[w]hile our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence."

We need not go into an extended analysis as outlined in syllabus point 5 of *Wanstreet* for two reasons. First, the Petitioner has tersely and inadequately briefed the issue. The Petitioner has provided a "skeletal" argument that is unsupported by citation to any law or cases that address the *Wanstreet* factors. We have long warned that "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim.... Judges are not like pigs, hunting for truffles buried in briefs." *State, Dept. of Health and Human Resources v. Robert Morris N*., 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995), *quoting United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Second, and more importantly,

24

the individual sentences imposed on Petitioner have fixed maximums and none of them involved a recidivist sentence.[21]  As a general rule, this Court has held that "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review."  Syl. pt. 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982).  Finally, as we stated in syllabus point 3 of *Keith v. Leverette*, 163 W. Va. 98, 254 S.E.2d 700 (1979), "[w]hen a defendant has been convicted of … separate crimes, before sentence is pronounced … the trial court may, in its discretion, provide that the sentences run concurrently, and unless it does so provide, the sentences will run consecutively."  *See* W. Va. Code § 61-11-21 (1923) (providing for concurrent and consecutive sentences).

## IV.

## CONCLUSION

In view of the foregoing, the circuit court's final order of October 6, 2017, is affirmed with respect to the claim of false and perjured trial testimony and the contention that the sentence was disproportionate. However, we reverse that part of the order which

---

[21] The minimum/maximum sentence for first degree sexual assault under W. Va. Code § 61-8B-3(b) (2006) is not less than fifteen years nor more than thirty-five years incarceration.  The minimum/maximum sentence for sexual abuse under W. Va. Code § 61-8D-5(a) (2010) is not less than ten nor more than twenty years of incarceration.

held that W.Va. Code § 61-11-23(b) does not apply retroactively to the Petitioner's sentence.

Affirmed in part and Reversed in part.