**FILED**
**March 24, 2026**

C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Petitioner Below, Respondent**

**v.) No. 23-577** (Berkeley County CC-02-2022-F-38)

**Stacey L. T.,**
**Respondent Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Stacey L. T. appeals the convictions and sentences memorialized in the September 7, 2023, sentencing order entered by the Circuit Court of Berkeley County.[1] On appeal, the petitioner argues that the court erroneously admitted video evidence during his trial, failed to grant his motion for judgment of acquittal based on insufficient evidence, and imposed an unconstitutionally disproportionate sentence. Upon our review, finding no substantial question of law and no prejudicial error, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21(c).

In February 2022, the petitioner was charged with fifteen counts of first-degree sexual assault;[2] five counts of third-degree sexual assault;[3] twenty counts of sexual abuse by a parent,

---

[1] The petitioner appears by counsel B. Craig Manford. The State appears by Attorney General John B. McCuskey and Assistant Solicitor General Spencer Davenport. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. We use initials where necessary to protect the victim's identity. *See* W. Va. R. App. P. 40(e).

[2] A person is guilty of first-degree sexual assault when "[t]he person, being 14 years old or more, engages in . . . sexual intrusion with another person who is younger than 12 years old." W. Va. Code § 61-8B-3(a)(2). "Sexual intrusion" is defined as "any act between persons involving penetration, however slight, of the female sex organ or the anus of any person by an object for the purpose of degrading or humiliating the person so penetrated or for gratifying the sexual desire of either party." *Id.* § 61-8B-1(7).

[3] A person is guilty of third-degree sexual assault when "[t]he person, being 16 years old or more, engaged in sexual intercourse of sexual intrusion with another person who is less than 16 years old and who is at least four years younger than the defendant." *Id.* § 61-8B-5(a)(2).

1

guardian, or custodian;[4] and twenty counts of incest.[5] The victim named in the indictment was the petitioner's daughter, A.S., and the indictment alleged that these crimes occurred "on or between a day in 2018 and a day in November of 2020."

At trial, West Virginia State Police Trooper Timothy Cathey testified that he received a complaint on November 30, 2020, alleging that the petitioner sexually assaulted A.S., who was twelve years old at the time. On December 4, 2020, Trooper Cathey attended an interview of A.S. at the Child Advocacy Center (CAC), and she disclosed that the petitioner had touched her breasts, touched her buttocks, and digitally penetrated her vagina on more than twenty occasions. On January 3, 2021, Trooper Cathey interviewed A.S.'s mother, Amy S., who showed him an exchange of messages with the petitioner after A.S. disclosed the abuse to her. Amy S. messaged the petitioner and asked, "anything you need to tell me?" The petitioner replied that he and A.S. were sleeping in the same bed when he "touched her and panic [sic]. I also panicked when I woke up with her hand on my thing and didn't know how to tell people." On January 19, 2021, Trooper Cathey attended a second interview of A.S. at the CAC in which she made an additional disclosure.

Amy S. testified that on the Monday before Thanksgiving in 2020, A.S. told her that "[m]y father has been molesting me." A.S. also told her that her stepmother, Robin, set up a Facebook account under a fictitious name so A.S. could "talk in group chats[.]" Amy S. discovered that the petitioner was also involved in these group chats, which were used for the purpose of sharing "pornography" amongst the group. Amy S. further testified that A.S. was born in April 2008.

Taylor Staubs, a forensic interviewer at the CAC, testified that she interviewed A.S. on two occasions. During these interviews, A.S. "disclosed several instances of digital penetration as well as an instance in her second interview of oral assault[,]" and she identified the petitioner as the perpetrator.[6]

A.S. testified at trial that when she lived with the petitioner in Falling Waters, West Virginia, the petitioner digitally penetrated her vagina and fondled her breasts more than twenty times over a period of two years. A.S. also testified that, on one occasion, the petitioner performed oral sex on her, and on a separate occasion, the petitioner touched her vagina with a cordless razor.[7]

---

[4] A person is guilty of sexual abuse by a parent if the parent engages in or attempts to engage in "sexual intrusion or sexual contact with a child under his or her care, custody, or control[.]" *Id.* § 61-8D-5(a). "Sexual contact" is defined as "any intentional touching, either directly or through clothing, of the breasts, buttocks, anus, or any part of the sex organs of another person, or intentional touching of any part of another person's body by the actor's sex organs and the touching is done for the purpose of gratifying the sexual desire of either party." *Id.* §§ 61-8B-1(5); 61-8D-1(9).

[5] A person is guilty of incest "when such person engages in . . . sexual intrusion with his or her . . . daughter." *Id.* § 61-8-12(b).

[6] At trial, the jury did not view the videos of these forensic interviews.

[7] A.S. explained that she participated in a second forensic interview in January 2021 because she was "still coming forward with a lot" after the first interview, and her mom wanted

2

A.S. further testified that at one point, the petitioner asked her, "You know I'm molesting you, right?" and A.S. replied, "Yeah." A.S. also stated that the petitioner said he wanted to have sex with her. On a different occasion, A.S. testified that she had injured her foot, and she texted the petitioner while she was in the shower, asking if he would wrap her foot, but she accidentally typed "can you rape up my foot." The petitioner entered the bathroom while naked and said, "you just asked me to rape you[,]" and she replied, "no, I didn't." A.S. also testified that she finally disclosed the abuse to her mother to avoid going alone with the petitioner to a remote cabin near Romney, West Virginia, because she "was scared he was going to rape me." The petitioner told A.S. that if she ever told anyone what he was doing to her, "he would hurt my family or he would kill himself."

A.S. further testified about the "Chamber of Secrets" Facebook group that she was encouraged to join by the petitioner and Robin when she was eleven years old. Both the petitioner and Robin were administrators of this Facebook group, and "[t]hey talked about it a lot[.]" On March 1, 2020, the petitioner informed her that she was an adult, and that she should interact in the group chat while using the fictitious Facebook account set up for her. While in the group chat, A.S. saw "adult pornography videos[.]"

Citing Rule 403 of the West Virginia Rules of Evidence,[8] the petitioner objected to the State's plan to show an exemplar of these videos to the jury and offered to "stipulate that it's adult pornography" to avoid shocking the jury. The State countered that the videos were relevant because they tended to prove that the petitioner "saw his little girl as a sexual partner and committed sexual acts on her." The circuit court overruled the petitioner's Rule 403 objection, finding that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. The court reasoned that "the videos are relevant with regard to the relationship between the father and daughter . . . [and] they are also relevant to the grooming of a very young child by exposing her to sexual content." The court further found that "for the jury to understand the relationship they do need to see at least a sampling of what she was exposed to." At the conclusion of the State's case-in-chief, the jury was shown "less than two minutes" of "adults engaged in an active sexual encounter[.]"

The petitioner moved for a judgment of acquittal, alleging that the State had not established how many offenses occurred before A.S. reached the age of twelve in April 2020. The court denied the motion, ruling that "the age of the child . . . is a finding of fact that must be left to the jury[,]" and finding that the evidence showed that the abuse "began in 2018" when A.S. was nine years old.

During the defense's case-in-chief, the petitioner called his stepfather Steve T., his stepmother Renate T., and his former father-in-law Robert J., to testify. Generally, these witnesses testified that they had no reason to suspect that the petitioner was guilty of the charges and that the

---

her "to figure out if there was more that I could come forward with instead of having to take multiple trips down there[.]"

[8] Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

petitioner appeared to have a good relationship with A.S. The petitioner also testified and denied all of the allegations against him, stating that if he had any inappropriate contact with A.S., it was accidental. After deliberation, the jury convicted the petitioner of all charges alleged in the indictment. The court sentenced the petitioner to the statutorily prescribed terms of incarceration, and it ordered that the sentences be served consecutively, which resulted in an effective sentence of 680 to 2,225 years of imprisonment. The petitioner now appeals.

First, the petitioner alleges that the circuit court erred when it allowed the jury to view a pornographic video that was posted in the Chamber of Secrets Facebook group because it was inadmissible under Rule 403 of the West Virginia Rules of Evidence. We review "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence . . . under an abuse of discretion standard." Syl. Pt. 4, *State v. Roudoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998). We have also held that, after a court determines that evidence is relevant, the court

> then must consider whether the probative value of the exhibit is substantially outweighed by the counterfactors listed in Rule 403 of the West Virginia Rules of Evidence. As to balancing under Rule 403, the trial court enjoys broad discretion. The Rule 403 balancing test is essentially a matter of trial conduct, and the trial court's discretion will not be overturned absent a showing of clear abuse.

Syl. Pt. 9, in part, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994).

Here, the petitioner does not contest the probative value of the video exemplar; he argues only that its probative value was substantially outweighed by the danger of unfair prejudice because "the grotesque and graphic videos in question obviously had a profound negative emotional impact upon the jurors[,] . . . easily leading them to make a decision . . . upon an improper basis." The starting point here is admissibility: "The balancing of probative value against unfair prejudice is weighed in favor of admissibility . . . ." *State v. LaRock*, 196 W. Va. 294, 312, 470 S.E.2d 613, 631 (1996). And "[u]nder Rule 403 '[u]nfair prejudice does not mean damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis.'" *State v. Taylor*, 215 W. Va. 74, 78-79, 593 S.E.2d 645, 649-50 (2004) (quoting *State v. LaRock*, 196 W. Va. 294, 312, 470 S.E.2d 613, 631 (1996)). "[C]ommonly, though not necessarily," that improper basis is "an emotional one." *Id.* (quoting Fed. R. Civ. P. 403 advisory committee's note). We are not convinced of the "profound negative emotional impact" that the petitioner presumes led to a decision based on an improper basis. The jury was shown only adult pornographic material, and the circuit court limited that viewing to two minutes. Considering that Rule 403 favors admissibility and that the court enjoyed broad discretion in conducting its Rule 403 balancing test, the petitioner's conclusory argument has failed to demonstrate a clear abuse of the court's discretion in conducting that test.[9] Second, the petitioner alleges that the circuit court erred when it denied his motion for judgment of acquittal because A.S.'s testimony was uncorroborated and incredible. When this

---

[9] The petitioner's offer to stipulate that the video was adult pornography does not alter our analysis. *See State v. Lewis*, 251 W. Va. 770, 785, 916 S.E.2d 612, 627 (2025) (Bunn, J., concurring) (reasoning that "prosecutors are generally permitted to put on evidence, rather than relying on bare stipulations or admissions.").

Court reviews "the sufficiency of the evidence to support a criminal conviction . . . the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syl. Pt. 1, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). The petitioner argues that he "made significant inroads into creating reasonable doubt" by pointing out "that there was no corroboration of the allegations against the Petitioner of any kind." He also questions the credibility of A.S.'s allegations because she "made only piecemeal disclosures and additions . . . with every new interview or confrontation . . . [and] these new allegations were beyond normal recollections and were obviously meant to inflame the jury."

We have held that "[a] conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible, the credibility is a question for the jury." Syl. Pt. 5, *State v. Beck*, 167 W. Va. 830, 286 S.E.2d 234 (1981). And "when a trial court is asked to grant a motion for acquittal based on insufficient evidence due to inherently incredible testimony, it should do so only when the testimony defies physical laws." *State v. McPherson*, 179 W. Va. 612, 617, 371 S.E.2d 333, 338 (1988). In this case, the petitioner fails to demonstrate that A.S.'s testimony defied physical laws. A.S. testified that the petitioner had been sexually abusing her for years. The jury heard A.S.'s testimony and found that testimony to be credible. *See Guthrie*, 194 W. Va. at 669 n.9, 461 S.E.2d at 175 n.9. ("An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact."). When the State's evidence is viewed in the light most favorable to the prosecution, the court did not err in denying the petitioner's motion for judgment of acquittal.

Finally, the petitioner argues that his sentence is unconstitutionally disproportionate because it "easily constitutes 8 or 9 life sentences on the bottom end of the indeterminant range."[10] We have held that "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syl. Pt. 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982). Impermissible sentencing factors include "race, sex, national origin, creed, religion, and socioeconomic status . . . ." *State v. Moles*, 18-0903, 2019 WL 5092415 (W. Va. Oct. 11, 2019) (memorandum decision) (citation omitted). Here, the petitioner does not claim that his sentence exceeds statutory limits, and there is no indication that it was based upon an impermissible factor. As such, his sentence is not subject to appellate review. Moreover, although the petitioner argues that the length of his sentence is unconstitutionally disproportionate to the crime he committed, our constitutional proportionality standards are "basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence." Syl. Pt. 4, in part, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981). Because this case involves neither, we need not apply proportionality principles. *See State v. Allen*, 208 W. Va. 144, 156, 539 S.E.2d 87, 99 (1999); *Christopher J. v. Ames*, 241 W. Va. 822, 835, 828 S.E.2d 884, 897 (2019) (declining to consider

---

[10] The maximum terms of imprisonment in effect for the petitioner's crimes of conviction are as follows – 25-100 years' imprisonment for first-degree sexual assault, W. Va. Code § 61-8B-3(c); 1-5 years' imprisonment for third-degree sexual assault, W. Va. Code § 61-8B-5(b); 10-20 years' imprisonment for sexual abuse by a parent, guardian, custodian, or person in a position of trust., W. Va. Code § 61-8D-5(a); and 5-15 years' imprisonment for incest, W. Va. Code § 61-8-12(c).

a proportionality challenge to consecutive sentences because the sentences were within statutory limits and not based on an impermissible factor).

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** March 24, 2026

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III