276 S.E.2d 205 (1981)
George WANSTREET,
v.
Donald E. BORDENKIRCHER, Superintendent West Virginia Penitentiary, Respondent.
No. 14968.
Supreme Court of Appeals of West Virginia.
March 10, 1981.
*207 Hugh Rogers, Jr., Kerens, for petitioner.
Chauncey H. Browning, Jr., Atty. Gen., Billie Gray, Asst. Atty. Gen., Charleston, for respondent.
*206 MILLER, Justice:
In this original habeas corpus proceeding, we are asked to find that the recidivist life sentence imposed after a third felony conviction violates the proportionality clause in Article III, Section 5 of the West Virginia Constitution.[1]
Relator Wanstreet was indicted in Doddridge County in 1951 for forging a check in the amount of $18.62. At the time he was indicted, he was eighteen years old. Upon his guilty plea, he was sentenced to two to ten years and placed on probation. In 1955, he pled guilty to arson for burning a hay barn. The total value of the barn was $490. This crime resulted in the revocation of his probation and the imposition of the original two- to ten-year sentence for forgery. He was also sentenced to one to fifteen years for burning the barn and one to eight years for burning the hay contained in the barn.[2] The arson sentences ran concurrently with each other but consecutively to the original forgery sentence.
According to the relator, he was paroled seven years later, but in 1963 his parole was revoked when he was found guilty of driving a motor vehicle without a license. He served three years in the penitentiary and was again paroled in 1966. In 1967, he was found guilty of forging a $43.00 check and was then given a recidivist life sentence under W.Va.Code, 61-11-18.

I.
An analysis of the proportionality issue must begin against the backdrop of our prior cases construing our recidivist statute, W.Va.Code, 61-11-18. We have upheld the validity of our recidivist statute in the face of a number of constitutional challenges. State v. Vance, W.Va., 262 S.E.2d 423 (1980); Martin v. Leverette, W.Va., 244 S.E.2d 39 (1978); State v. Graham, 68 W.Va. 248, 69 S.E. 1010 (1910), aff'd, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917 (1912). In the applicable portion of Syllabus Point 3 of Martin, supra, we stated:
"[T]he habitual criminal statute, W.Va. Code, 61-11-18, and the enhanced sentence provided thereunder, are not per se violative of the Equal Protection or Cruel and Unusual Punishment Clauses of the West Virginia or the United States Constitutions."
This same result has been reached by the United States Supreme Court as against challenges made to our statute based on due process and equal protection grounds, Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962), and as against claims of double jeopardy and cruel and unusual punishment, Graham v. West Virginia, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917 (1912).
Despite these affirmations of the constitutionality of the statute per se, we have historically adopted a rather strict and *208 narrow construction of our recidivist statute. In State ex rel. Ringer v. Boles, 151 W.Va. 864, 871, 157 S.E.2d 554, 558 (1967), we stated:
"Habitual criminal proceedings providing for enhanced or additional punishment on proof of one or more prior convictions are wholly statutory. In such proceedings, a court has no inherent or common law power or jurisdiction. Being in derogation of the common law, such statutes are generally held to require a strict construction in favor of the prisoner. 24B C.J.S. Criminal Law § 1959, page 438."
Consistent with this proposition, we have excluded from consideration as prior felonies those offenses which were punishable as felonies only because the defendant repeated the commission of an offense that was in itself a misdemeanor. State v. Brown, 91 W.Va. 187, 112 S.E. 408 (1922). In Brown, we explained that the felonies within the scope of the recidivist statute must be those that are felonies because of the "character of the offense," rather than those that are felonies because of the "character of the accused." 91 W.Va. at 189, 112 S.E. at 409.
We have also excluded from the recidivist statute felonies which were committed before the conviction and sentencing for a previous felony had been completed. This ruling is based on the determination that the function of the statute is to deter future crimes. Consequently, the statute's application is only to those offenders, who having been previously convicted and sentenced, proceed to commit further crimes. State v. McMannis, W.Va., 242 S.E.2d 571 (1978); State ex rel. Yokum v. Adams, 145 W.Va. 450, 114 S.E.2d 892 (1960); State ex rel. Medley v. Skeen, 138 W.Va. 409, 76 S.E.2d 146 (1953); Dye v. Skeen, 135 W.Va. 90, 62 S.E.2d 681 (1950).
This Court has also excluded convictions by a military court, because of their fundamentally distinct nature, from the scope of felonies covered by the recidivist statute. State v. Wheeler, 123 W.Va. 279, 14 S.E.2d 677 (1941).
From a procedural standpoint, we have held that "the charge of former convictions must be proved with the same degree of certainty as the charge of the substantive offense." State v. Lawson, 125 W.Va. 1, 3, 22 S.E.2d 643, 644 (1942). Thus, where the issue of identity is contested in a recidivist proceeding, the State must bear the burden of proving identity beyond a reasonable doubt. State v. Vance, W.Va., 262 S.E.2d 423 (1980). Moreover, the State must prove beyond a reasonable doubt that the subsequent felonies, for recidivist purposes, were committed only after the conviction and sentencing for each prior felony. State v. McMannis, W.Va., 242 S.E.2d 571 (1978). In Vance, supra, we addressed some of the reasons for affording due process protection in a recidivist proceeding:
"A recidivist proceeding is not simply a sentencing hearing, but a proceeding whereby a new criminal status, that of being an habitual criminal, is determined.... If an individual is successfully prosecuted as an habitual criminal, a greater penalty than that attaching to the underlying crime is imposed. For these reasons, courts have required substantial due process protection in recidivist proceedings..." 262 S.E.2d at 429. (Citations Omitted)
This Court has repeatedly held that the underlying felony convictions must be constitutionally valid convictions, and thus has vacated recidivist sentences based on felony convictions obtained without the assistance of defense counsel, unless the record contains an affirmative showing that the right to counsel was voluntarily and intelligently waived. State ex rel. Johnson v. Boles, 151 W.Va. 224, 151 S.E.2d 213 (1966); State ex rel. Widmyer v. Boles, 150 W.Va. 109, 144 S.E.2d 322 (1965); State ex rel. Lovejoy v. Boles, 149 W.Va. 532, 142 S.E.2d 374 (1965); State ex rel. Whytsell v. Boles, 149 W.Va. 324, 141 S.E.2d 70 (1965). We have also held that a prior felony conviction may be voided if the defendant was denied the right to effective assistance of counsel. Housden v. Leverette, W.Va., 241 S.E.2d 810, 811 (1978).
*209 Other strict procedural standards[3] are manifested by State ex rel. Ringer v. Boles, 151 W.Va. 864, 871, 157 S.E.2d 554, 558 (1967), where we stated that "[t]his Court has consistently held that the habitual criminal statutes of this state are mandatory and jurisdictional." In State ex rel. Yokum v. Adams, 145 W.Va. 450, 114 S.E.2d 892 (1960), we held that the failure to comply with the procedural requirements set out in the statute will render the recidivist sentence subject to habeas corpus attack regardless of the defendant's failure to object to the procedural irregularities at the recidivist hearing.
Based on these principles, recidivist sentences have been vacated for failure to file the recidivist information in writing, State ex rel. Nutter v. Boles, 150 W.Va. 93, 144 S.E.2d 238 (1965); State ex rel. Cox v. Boles, 146 W.Va. 392, 120 S.E.2d 707 (1961); State ex rel. Yokum v. Adams, 145 W.Va. 450, 114 S.E.2d 892 (1960); for failure to file the recidivist information at the same term as the last underlying conviction, State ex rel. Foster v. Boles, 147 W.Va. 655, 130 S.E.2d 111 (1963); State ex rel. Housden v. Adams, 143 W.Va. 601, 103 S.E.2d 873 (1958); for failure to duly caution the defendant regarding his rights under the statute, State ex rel. McClure v. Boles, 149 W.Va. 599, 142 S.E.2d 733 (1965); State ex rel. Beckett v. Boles, 149 W.Va. 112, 138 S.E.2d 851 (1964); State ex rel. Cox v. Boles, 146 W.Va. 392, 120 S.E.2d 707 (1961); and for failure to provide a jury trial where the right has not been unequivocally waived, State ex rel. Ringer v. Boles, 151 W.Va. 864, 157 S.E.2d 554 (1967).
From the foregoing cases, it is apparent that we have consistently viewed the West Virginia recidivist statute in a restrictive fashion in order to mitigate its harshness.

II.
The constitutional requirement that a criminal sentence "shall be proportioned to the character and degree of the offence" is explicitly stated in Article III, Section 5 of our State Constitution.[4] This principle of proportionality has been recognized in a number of our cases. E. g., State v. Houston, W.Va., 273 S.E.2d 375 (1980); State v. Vance, W.Va., 262 S.E.2d 423 (1980); Martin v. Leverette, W.Va., 244 S.E.2d 39 (1978); State ex rel. Harris v. Calendine, W.Va., 233 S.E.2d 318 (1977); State v. Newman, 108 W.Va. 642, 152 S.E. 195 (1930); Franklin v. Brown, 73 W.Va. 727, 81 S.E. 405 (1914). In State v. Vance, supra, we made this statement in Syllabus Point 8:
"Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: `Penalties shall be proportioned to the character and degree of the offence.'"
While the Eighth Amendment to the United States Constitution contains no such explicit statement of the proportionality principle,[5] the Supreme Court has recognized that the principle is implicit in its prohibition against cruel and unusual punishment. Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980); Ingraham v. Wright, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910). In Rummel, the Court declined to apply the proportionality principle to reverse a Texas life recidivist conviction *210 where the three felony convictions involved a forgery, fraudulent use of a credit card, and obtaining money under false pretenses. In effect, Rummel refused to follow proportionality principles set down in Hart v. Coiner, 483 F.2d 136 (4th Cir. 1973).[6]
Prior to Rummel, we had acknowledged in Martin v. Leverette, W.Va., 244 S.E.2d 39, 43 (1978), the proportionality principle established in Hart. In Martin we summarized Hart's four-factor test which analyzes:
"(1) [T]he nature of the offense; (2) the legislative purpose behind the punishment; (3) a comparison of the punishment with what would be inflicted in other jurisdictions; and (4) a comparison of punishment with other related offenses within the same jurisdiction. 483 F.2d at 140-142."
Much the same principle was stated in State ex rel. Harris v. Calendine, W.Va., 233 S.E.2d 318, 330 (1977). We declined any extensive discussion of the proportionality principle in Martin since we were dealing with a five-year enhancement on a second felony conviction for burglary where the first felony was an armed robbery. We noted in Martin that "[b]oth crimes are serious and involve the threat of violence against persons, if not actual violence in the case of armed robbery."[7] 244 S.E.2d at 43-44.
The same reasoning was applied in State v. Vance, supra, where we declined to find a life recidivist conviction disproportionate where there had been three breaking and entering convictions. In Harris, supra, we applied our constitutional proportionality principle and held that juvenile status offenders could not be incarcerated in secure prison-like facilities along with children guilty of criminal conduct. All of these cases were decided prior to Rummel and recognized the proportionality principle under the express language of our State Constitution.
Thus, it is clear that prior to Rummel, we had concluded that Article III, Section 5 of our State Constitution expressly requires that a criminal sentence be proportionate to the underlying offense. The United States Supreme Court has explicitly recognized that a state is free to establish under its own constitution higher standards of protection than are afforded under the United States Constitution. E. g., Oregon v. Hass, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1968).

III.
The utilization of a series of objective standards to determine whether a particular sentence violates our constitutional concept of proportionality is designed to prevent sentencing patterns that merely reflect the personal predilections of individual judges. Objective and uniform sentencing standards is an area of law which has come under increasing scrutiny and has resulted in a considerable body of literature.[8] Such *211 objective standards also ensure that appellate courts will not inject their personal views as to appropriateness of a given sentence unless the sentence can be shown to have violated the objective criteria of constitutional proportionality.
While our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence. We made this point in State v. Houston, W.Va., 273 S.E.2d 375 (1980):
"It should be noted that the robbery by violence statute is one of the few criminal statutes in our jurisdiction that enables the court to set a determinate sentence without reference to any statutory maximum limit. With the exception of the life recidivist statute discussed in State v. Vance, supra, we do not believe that the disproportionality principle can have any significant application other than to this type of sentencing statute."[9]
In Harris, we spoke of three objective factors,
"which can be useful in determining whether certain punishment is constitutionally disproportionate. These factors are: (1) the nature of the offense itself; (2) the legislative purpose behind the punishment; and (3) what punishment would have been applied in other jurisdictions. Hart v. Coiner, 483 F.2d 136 (4th Cir. 1973)." 233 S.E.2d at 330.
In Hart v. Coiner, supra, where the court considered our recidivist statute, it included a fourth factor, a comparison of punishment with other offenses within the same jurisdiction.[10] 483 F.2d at 142.
In the recidivist area the underlying purpose of the statute is the imposition of increased confinement for the dangerous criminal who repeatedly commits serious crimes.[11] As to the ordinary criminal statute, we have traditionally held that the Legislature has a broad power in defining offenses and prescribing punishments, limited in severity only by the constitutional prohibition against cruel or unusual or disproportionate sentences. State ex rel. Cogar v. Kidd, W.Va., 234 S.E.2d 899 (1977); State ex rel. Slatton v. Boles, 147 W.Va. 674, 130 S.E.2d 192 (1963); State v. Painter, 135 W.Va. 106, 63 S.E.2d 86 (1951).
*212 When we analyze a life recidivist sentence under proportionality principles, we are in effect dealing with a punishment that must be viewed from two distinct vantage points: first, the nature of the third offense and, second, the nature of the other convictions that support the recidivist sentence. This duality is occasioned by the fact that the punishment for the third felony conviction is an automatic life sentence regardless of the nature of the penalty for the underlying third felony. It might be argued that a proper inquiry would be to focus on the nature of the third felony conviction, and determine whether a life sentence is disproportionate when compared with sentences for a similar felony both within and without our jurisdiction.[12]
We do not believe that the sole emphasis can be placed on the character of the final felony which triggers the life recidivist sentence since a recidivist statute is also designed to enhance the penalty for persons with repeated felony convictions, i. e., the habitual offenders. However, for purposes of proportionality, the third felony is entitled to more scrutiny than the preceding felony convictions since it provides the ultimate nexus to the sentence.[13] In the present case, the last felony was forgery of a $43.00 check, a nonviolent crime, which if considered in isolation could have carried a punishment ranging from a maximum of 1 to 10 years in the penitentiary or, at the discretion of the court, a jail sentence of not more than one year and a fine not exceeding five hundred dollars. W.Va.Code, 61-4-5.[14]
It cannot be doubted that the imposition of a mandatory life sentence for the felony of forgery imposes a penalty which in our jurisdiction is unmatched except for the crime of first degree murder, treason, and kidnapping involving bodily harm, and even there only when the jury refuses to recommend mercy.[15] Thus, we are confronted with this anomaly that elevates a conviction for forgery to a punishment slightly below the murderer who is found by the jury not to warrant a recommendation of mercy. No sexual offense, no matter how aggravated, carries a confinement sentence of more than 10 to 20 years, and even if repeated would bring only a five-year enhancement on the second conviction.
Because a person under life sentence can become eligible for parole in ten years, W.Va.Code, 62-12-13, it is possible under several of our open-ended sentencing statutes for a defendant to actually serve a longer sentence in terms of years than might be served under a sentence of life. E. g., W.Va.Code, 61-2-12 (armed robbery, a minimum of 10 years); W.Va.Code, 61-2-14a (certain forms of kidnapping, i. e., not less than 20 years, and not less than 10 years); W.Va.Code, 61-3-20 (bank embezzlement, not less than 10 years). Under these open-ended sentencing statutes, however, the specific term of sentence is discretionary with the court, whereas the life recidivist sentence is nondiscretionary. Furthermore, we have provided a mechanism for sentence review on these open-ended sentences. State v. Houston, W.Va., 273 S.E.2d 375 (1980).
There is even a parole eligibility disparity under W.Va.Code, 62-12-13, since a person *213 sentenced to life imprisonment may be eligible for parole in 10 years but a life recidivist is not eligible for 15 years. Thus, a person convicted of first degree murder with a recommendation of mercy may be eligible for parole in 10 years, but under this same statute a life recidivist whose third felony is a forged check is not eligible for parole until he has served 15 years.
In analyzing the two prior felony convictions, we note that the first conviction was for forgery of an $18.62 check, a property offense, which, if valued by the amount obtained in larceny terms, would be petit larceny. This offense was followed four years later by the arson of a barn. Neither of these felonies carried the threat of potential or actual violence to the person, which should be crucial to the application of the proportionality principle. We recognize that arson of a structure inhabited by people presents an entirely different problem.
It is not without some significance that in the present case, relator received a five-year enhanced sentence on each of the arson charges. In addition, the arson sentences were set consecutive to the forgery sentence, which was activated by his probation violation. Recognizing that punishment is an acknowledged component of any criminal justice system, it can hardly be doubted that upon his conviction for arson, the relator received almost the maximum punishment that could be meted out under our penal code.[16]
Although the nature of the punishment meted out on the prior felony convictions does not serve to extinguish consideration of these prior felonies in weighing the proportionality of the recidivist life sentence, such prior punishment is entitled to some consideration in weighing the overall retributive effect of the life recidivist sentence as to the third felony. There is woven throughout the proportionality principle, as well as the cruel and unusual punishment prohibition, the concept of "evolving standards of decency," Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630, 642 (1958), a principle that we have recognized, e. g., State ex rel. K. W. v. Werner, W.Va., 242 S.E.2d 907, 910 (1978); State ex rel. Pingley v. Coiner, 155 W.Va. 591, 608, 186 S.E.2d 220, 230 (1972).
The problem lies not in the underlying criminal penalties but in the undifferentiated nature of our recidivist statute. It has been pointed out in both Rummel v. Estelle, supra, and Hart v. Coiner, supra, that our recidivist statute is among the most draconian in the nation. Rummel noted that only Texas, Washington and West Virginia have recidivist statutes which make a life sentence mandatory after the third felony conviction regardless of whether any of the offenses are violent. 445 U.S. at 279, 296, 100 S.Ct. at 1141-42, 1151, 63 L.Ed.2d at 394, 405.
It is true that the majority in Rummel considered parole eligibility under the Texas recidivist life sentence, however, the parole-moderating argument tends to overlook several harsh practical facts. First, there is no automatic right to parole once the prisoner crosses the threshold of eligibility. Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); State v. Lindsey, W.Va., 233 S.E.2d 734 (1977). Second, parole even if granted does not automatically obliterate the life sentence.[17] As indicated by the facts in this case, a relatively minor infraction while on parole, such as driving a car without a license, can result in a revocation of the parole.
While it may not be possible to construct an arithmetical formula by which the proportionality principle will be applied, there are objective standards that govern *214 the application of the proportionality principle to a life recidivist sentence. We initially noted our historic treatment of the recidivist statute to be one of strict construction. In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction. We give initial emphasis to the nature of the final offense which triggers the recidivist life sentence, although consideration is also given to the other underlying convictions. The primary analysis of these offenses is to determine if they involve actual or threatened violence to the person since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the recidivist statute. A further analysis is then made of our recidivist statute in relation to other states' recidivist statutes to determine their treatment of similar offenses.
In the present case, we conclude that the imposition of the life recidivist sentence for the relator's third felony of forging a $43.00 check violates our constitutional proportionality principle. We cannot conceive of any rational argument that would justify this sentence in light of the nonviolent nature of this crime and the similar nature of the two previous crimes, unless we are to turn our backs on the command of our proportionality clause and merely conclude that regardless of the gravity of the underlying offenses the maximum life sentence may be imposed. This would ignore the rationality of our criminal justice system where penalties are set according to the severity of the offense.
For the foregoing reasons the writ of habeas corpus is awarded and the prisoner is discharged from further confinement.
Writ Awarded.
NOTES
[1] The material portion of Article III, Section 5 of the West Virginia Constitution is:

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted. Penalties shall be proportioned to the character and degree of the offence."
[2] These sentences were given a five-year enhancement as a result of the original forgery conviction. W.Va.Code, 61-11-18.
[3] W.Va.Code, 61-11-19, contains the procedural provisions for invoking the recidivist penalties found in W.Va.Code, 61-11-18. For reference purposes in this section we have treated both provisions as a single statute.
[4] The principle of proportionality can be traced to the Magna Carta where it is stated "[a] free man shall not be [fined] for a trivial offence, except in accordance with the degree of the offence; and for a serious offence he shall be [fined] according to its gravity." See Rummel v. Estelle, 445 U.S. 263, 288-89, 100 S.Ct. 1133, 1147, 63 L.Ed.2d 382 (1980), citing, J. Holt, Magna Carta 323 (1965).
[5] The Eighth Amendment of the United States Constitution provides:

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."
[6] Hart involved a West Virginia life recidivist who had a perjury conviction and prior convictions for writing a check on insufficient funds and interstate transportation of forged checks. The Court held the life sentence to be disproportionate under the Eighth Amendment.
[7] Martin's focus on the violent nature of the crime was a theme emphasized in Hart v. Coiner and applied in Griffin v. Warden, 517 F.2d 756 (4th Cir. 1975), cert. denied, 423 U.S. 990, 96 S.Ct. 402, 46 L.Ed.2d 308, where the Court declined to apply the proportionality principle to reverse a life recidivist conviction based on a grand larceny, a prior breaking and entering, and a burglary.
[8] ABA Standards Relating to Appellate Review of Sentences (Approved Draft 1968); Hennessey, Disparity in Sentencing, 3 New Eng.J.Prison L. 5 (1976); Morris, Toward Principled Sentencing, 37 Md.L.Rev. 267 (1977); Symposium on Sentencing (Pts. I & II), 7 Hofstra L.Rev. 1, 243 (1978-1979); Wilkins, Sentencing Guidelines to Reduce Disparity?, 1980 Crim.L.Rev. 201; Note, Eighth Amendment Proportionality, 7 Am.J.Crim.L. 253 (1979); Note, Disproportionality in Sentences of Imprisonment, 79 Colum.L.Rev. 1119 (1979); Note, Disparity and Discretion in Sentencing: A Proposal for Uniformity, 25 UCLA L.Rev. 323 (1977); Note, Sentencing: Proportionality Analysis under the Eighth Amendment, 20 Washburn L. J. 186 (1980); Note, Constitutional LawEighth AmendmentAppellate Sentence Review, 1976 Wis.L.Rev. 685.
[9] In Houston, we stated in Note 7:

"Other open-ended sentencing statutes are the kidnapping statute, W.Va.Code, 61-2-14a, 61-2-14c and 61-2-14d; the bank embezzlement statute, W.Va.Code, 61-3-20; and the crime of obstruction of railroads or canals to endanger lives, W.Va.Code, 61-3-28."
It should be noted that our discussion of the proportionality principle in this case, as well as in Vance and Martin, does not involve statutes imposing the death penalty where there is the added element of cruel and unusual punishment. See, e. g., Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977). Nor does our discussion involve those extreme examples where the statutory punishment is facially unconstitutional as disproportionate, as illustrated by the hypothetical in Rummel v. Estelle, 445 U.S. 263, 274 n.11, 288, 100 S.Ct. 1133, 1139 n.11, 1146, 63 L.Ed.2d 382, 391 n.11, 400 (1980), where both the majority and dissent indicated that a "statute that levied a mandatory life sentence for overtime parking" would be unconstitutional. Cf. Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).
[10] Justice Powell in his dissent in Rummel summarized the traditional objective standards utilized to determine if a given sentence is disproportionate:

"(i) [T]he nature of the offense, see Coker v. Georgia, 433 U.S. [584] at 598, 97 S.Ct. 2861 [at 2869], 53 L.Ed.2d 982; id., at 603, 97 S.Ct. 2861 [at 2871-2872], 53 L.Ed.2d 982 (Powell, J., concurring and dissenting); (ii) the sentence imposed for commission of the same crime in other jurisdictions, see Coker v. Georgia, 433 U.S. at 593-594, 97 S.Ct. 2861 [at 2866-2867], 53 L.Ed.2d 982; Gregg v. Georgia, 428 U.S. [153] at 179-180, 96 S.Ct. 2909 [at 2928], 49 L.Ed.2d 859; Weems v. United States, 217 U.S. [349], at 380, 30 S.Ct. 544 [, at 554], 54 L.Ed. 793; cf. Trop v. Dulles, 356 U.S. 86 at 102-103, 78 S.Ct. 590 [at 598-599], 2 L.Ed.2d 630, and (iii) the sentence imposed upon other criminals in the same jurisdiction, Weems v. United States, 217 U.S. at 380-381, 30 S.Ct. 544 [at 554-555], 54 L.Ed. 793."
[11] L. Sleffel, The Law and the Dangerous Criminal (1977); Brown, West Virginia Habitual Criminal Law, 59 W.Va.L.Rev. 30 (1956).
[12] At least one commentator has made this argument. Note, Disproportionality In Sentences of Imprisonment, 79 Colum.L.Rev. 1119, 1164-66 (1979). A number of states have provided by statute that the recidivist life sentence is triggered only when one or more of the underlying convictions involve a serious or violent felony. E. g., Cal.Pen.Code § 644; Del.Code Ann. tit. 11, § 4214; Ky.Rev.Stat.Ann. § 532.080; S.C.Code § 17-25-40; Tenn.Code Ann. § 40-2802.
[13] This point was not discussed in either Martin, Vance or Griffin because the last felony, as well as the prior felonies, involved the potential of violence to the person. In Hart, none of the felonies were violent.
[14] At the time of relator's original forgery offense in 1951, the only penalty was 2 to 10 years. In 1961, the Legislature amended the penalties for forgery to their present form. Ch. 27, 1961 Acts of Legislature.
[15] In the treason statute, W.Va.Code, 61-1-2, the jury may in lieu of a life sentence impose a sentence of "not less than three nor more than ten years."
[16] Aside from double jeopardy considerations, with the arson of the barn and its contents being treated as separate offenses, the only more severe sentence the court could have imposed would be to have each arson sentence run consecutively to each other and consecutive to the initial forgery sentence.
[17] W.Va.Code, 62-12-18, does permit the parole board, in its discretion, to discharge a person paroled under a life sentence after 5 years on parole.