IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

JANUARY 2020 TERM

_____

No. 18-0945

_____

FILED
**February 25, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Respondent

V.

PATRICK C.,
Petitioner

_____

Appeal from the Circuit Court of Gilmer County
Honorable Jack Alsop, Judge
Criminal Action No. 12-F-5

AFFIRMED
_____

Submitted:  January 28, 2020
Filed:  February 25, 2020*

Kevin W. Hughart, Esq.                      Patrick Morrisey, Esq.
M. Tyler Mason, Esq.                         Attorney General
Hughart Law Office                           Holly M. Flanigan, Esq.
Sissonville, West Virginia                   Assistant Attorney General
Attorneys for Petitioner                     Charleston, West Virginia
                                             Attorneys for Respondent

JUSTICE HUTCHISON delivered the Opinion of the Court.

JUSTICE WORKMAN concurs and reserves the right to file a concurring opinion.

SYLLABUS BY THE COURT

1.  "Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity, thereby violating West Virginia Constitution, Article III, Section 5 that prohibits a penalty that is not proportionate to the character and degree of an offense." Syllabus point 5, *State v. Cooper*, 172 W.Va. 266, 304 S.E.2d 851 (1983).

2.  "While our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence."  Syllabus point 4, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981).

3.  "In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction."  Syllabus point 5, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981).

**Hutchison, Justice**:

This appeal was brought by Patrick C. (hereinafter "Petitioner") from a September 28, 2018, order of the Circuit Court of Gilmer County resentencing him to not less than ten nor more than twenty-five years in prison.[1] The Petitioner was resentenced, for appeal purposes, subsequent to his guilty plea to a charge of failure to provide sex offender registration change of information. In this appeal the Petitioner argues that his sentence shocks the conscience and is disproportionate to the offense. Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we affirm.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The record in this case indicates that on August 18, 2006, the Petitioner entered a guilty plea, in the Magistrate Court of Lewis County, to the misdemeanor offense of sexual abuse in third degree.[2] Subsequent to the guilty plea the Petitioner was given the

---

[1] Consistent with our long-standing practice in cases involving juveniles and sensitive facts, we use the initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 256 n.1, 773 S.E.2d 20, 22 n.1 (2015).

[2] The Petitioner was initially charged with the felony offense of sexual assault in the third degree. At the time of the offense, the Petitioner was twenty years old and the victim was fourteen years old.

1

maximum sentence of ninety days in jail. Further, pursuant to W. Va. Code § 15–12–4(a)(2)(E) (2018), of the West Virginia Sex Offender Registration Act (the Act), the Petitioner was required to register as a sexual offender for life.[3]  The Petitioner did not appeal the conviction or sentence.

On September 10, 2007, the Petitioner was indicted on four counts of failing to provide a change in his sex offender registration information as required under the Act. The charges involved Petitioner's failure to provide authorities with two changes in his cell phone numbers, an address change, and a motor vehicle registration change.  On February 8, 2008, the Petitioner entered a guilty plea to one felony count in the indictment.  The circuit court sentenced the Petitioner to an indeterminate term of one to five years, but suspended the sentence and placed the Petitioner on probation.  The Petitioner did not appeal the conviction or sentence.

Several months after the Petitioner's initial violation of the Act, he was charged with a second violation of the Act for failing to inform authorities that he opened a Yahoo account. On July 30, 2008, the Petitioner entered a guilty plea to his second violation of the Act.  Subsequently the Petitioner was ordered by the circuit court to undergo rehabilitation at the Anthony Center.  On August 27, 2009, after Petitioner's return

---

[3] The Act was amended subsequent to the Petitioner's sentence but the amendment is not relevant to this appeal.

2

from the Anthony Center, the circuit court reinstated his initial sentence of one to five years in prison, and imposed a second sentence of one to five years in prison for the second conviction. The sentences were ordered to be served consecutively, but the circuit court suspended the sentences and placed the Petitioner on probation for a period of five years. The Petitioner did not appeal this disposition.

On March 6, 2012, a grand jury returned a three count indictment against the Petitioner charging him with failing to report his creation of two Facebook accounts and a change in address. In June of 2012, the Petitioner pled guilty to one count in the indictment for failure to report the creation of a Facebook account, in exchange for dismissing the other two counts in the indictment. On August 30, 2012, the circuit court sentenced the Petitioner to not less than ten nor more than twenty-five years in prison. The Petitioner did not appeal this conviction and sentence.[4]

The Petitioner eventually filed a petition for habeas corpus relief, which was denied by an order of the circuit court on July 6, 2015. However, in that order the circuit court granted the Petitioner leave to file a motion to reconsider his previously imposed sentence of ten to twenty-five years in prison. On August 27, 2015, the Petitioner filed a motion to reduce his sentence under Rule 35(b) of the West Virginia Rules of Criminal

---

[4] The Petitioner's probation was also revoked.

Procedure. The Petitioner sought to have his sentence reduced to a flat sentence of ten years or twelve years. By order entered on September 14, 2015, the circuit court denied the Rule 35(b) motion. The Petitioner appealed the denial of the motion to this Court. In an opinion, *State v. Collins*, 238 W. Va. 123, 792 S.E.2d 622 (2016), this Court affirmed the circuit court's ruling.[5]

After this Court rendered the decision in *Collins*, the Petitioner filed another habeas corpus petition with the circuit court in July of 2017. While the habeas petition was pending the Petitioner filed a motion to be resentenced under his guilty plea to the Facebook charge. The Petitioner argued that his counsel failed to file an appeal challenging his sentence. The circuit court granted the motion and permitted the Petitioner to raise constitutional arguments against the sentence.[6] In its order of September 28, 2018, the circuit court rejected the Petitioner's constitutional challenge to his sentence and reimposed

---

[5] In the *Collins* opinion this Court questioned the propriety of the circuit court's decision to permit the Petitioner to file an untimely Rule 35(b) motion. However, it was noted in *Collins* that because the State failed to object to the Rule 35(b) motion before the circuit court, "we decline[d] to address any error regarding the late filing of the motion." *Collins*, 238 W. Va. at 126 n.9, 792 S.E.2d at 625 n.9.

[6] In the *Collins* decision the Petitioner attempted to raise a constitutional challenge to his sentence. However, this Court refused to address the issue in the context of an appeal of a Rule 35(b) motion. It was noted in *Collins* that such a challenge is more appropriate in a direct appeal of a sentencing order, after the trial court has had an opportunity to address the matter.

4

the sentence of not less than ten nor more than twenty-five years in prison. This appeal followed the resentencing order.

## II.

## STANDARD OF REVIEW

In this appeal we are called upon to review a constitutional challenge to the circuit court's sentencing order. We review "sentencing orders ... under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. pt. 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997). Where the issue involves the application of constitutional protections, our review is de novo. *See* Syl. pt. 8, *Dean v. State*, 230 W. Va. 40, 736 S.E.2d 40 (2012) ("A review of a proportionality determination made pursuant to the Excessive Fines Clause of the West Virginia Constitution is de novo."); *Richmond v. Levin*, 219 W. Va. 512, 515, 637 S.E.2d 610, 613 (2006) ("interpretations of the West Virginia Constitution, along with interpretations of statutes and rules, are primarily questions of law, we apply a de novo review.").

## III.

## DISCUSSION

This case involves the Petitioner's appeal of an order resentencing him to imprisonment for not less than ten nor more than twenty-five years. In this appeal the

Petitioner argues that his sentence violates the state and federal constitutions because it shocks the conscience and is disproportionate to the crime.[7] The Respondent argues that the sentence does not shock the conscience and is not disproportionate.

To facilitate a contextual understanding of the legal arguments presented, we pause to provide a summary of the reporting requirements under the Act. After a person is convicted of certain qualifying offenses, the Act requires that he or she provide various information to the West Virginia State Police detachment responsible for covering the county of his or her residence. *See* W. Va. Code § 15-12-2(d) (2018). One such reporting requirement imposed by the Act, and relevant here, is that of providing "[i]nformation relating to any Internet accounts the registrant has and the screen names, user names, or aliases the registrant uses on the Internet." W. Va. Code § 15-12-2(d)(8). When any of the information required to be provided to the sex offender registry changes, the registrant must, "within ten business days, inform the West Virginia State police of the changes in the manner prescribed by the Superintendent of State Police[.]" W. Va. Code § 15-12-3 (2012). The Act also provides that if a person refuses to provide accurate information when

---

[7] The Petitioner's brief cites to the federal constitution, but his legal analysis is confined to the state constitution. Consequently, we will limit our analysis to the state constitution. *See* Syl. pt. 8, *State v. Vance*, 164 W. Va. 216, 262 S.E.2d 423 (1980) ("Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of the offence.'").

6

so required, knowingly fails to register or provide a change in any required information he or she is guilty of a felony and, for a first offense, must "be imprisoned in a state correctional facility for not less than one year nor more than five years. Any person convicted of a second or subsequent offense … is guilty of a felony and, upon conviction thereof, shall be imprisoned in a state correctional facility for not less than ten nor more than twenty-five years." W. Va. Code § 15-12-8(c) (2006).

We note that typically "[s]entences imposed by the trial court, if within statutory limits and if not based on some unpermissible factor, are not subject to appellate review." Syl. pt. 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982). In this case the record is clear in showing that the Petitioner's sentence falls squarely within the statutory limits. The applicable statute, W. Va. Code § 15-12-8(c), expressly states that a person convicted of a second or subsequent offense "shall be imprisoned in a state correctional facility for not less than ten nor more than twenty-five years." Further, the Respondent has pointed out that "Petitioner does not contend the sentence was based on some impermissible factor." Thus, outside the context of Petitioner's constitutional arguments, his sentence is not reviewable by this Court. *See State v. Huskey*, No. 17-0759, 2018 WL 1709109, at *2 (W. Va. Apr. 9, 2018) (Memorandum Decision) ("It is undisputed that petitioner's sentence was within statutory limits…. Thus, to be subject to appellate review, petitioner must identify some impermissible factor upon which the circuit court based his sentence. Petitioner did not identify any such impermissible factors in his brief

7

on appeal. Accordingly, we find that the circuit court did not err in imposing sentence."); *State v. Slater*, 222 W. Va. 499, 507, 665 S.E.2d 674, 682 (2008) ("We conclude that the appellant's sentence is not subject to our review because the sentence imposed for each conviction is within the statutory limit and the appellant has identified no impermissible factor upon which his sentence is based.").

With respect to Petitioner's constitutional proportionality arguments, we have previously held that "[w]hile our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence." Syl. pt. 4, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981). Insofar as Petitioner's sentence has a fixed statutory maximum, syllabus point 4 of *Wanstreet* instructs us that ordinarily such a sentence is not appropriate for proportionality analysis. *See State v. Allen*, 208 W. Va. 144, 156, 539 S.E.2d 87, 99 (1999) ("Because this case involves neither the possibility of unlimited sentences nor a life recidivist statute, we decline Allen's invitation to apply proportionality principles herein."). However, we will exercise our discretion and review Petitioner's proportionality arguments. *See State v. Hoyle*, No. 18-0141, 2019 WL 6258349, at *9 (W. Va. Nov. 22, 2019) ("West Virginia Code § 15-12-8(c) explicitly states that '[a]ny person convicted of a second or subsequent offense under this subsection is guilty of a felony and, upon conviction thereof, shall be imprisoned in a state correctional facility for not less than ten nor more than twenty-five

8

years.'  This statutory sentence is precisely what the trial court imposed on Mr. Hoyle and so, under our prior cases, the sentence is well-insulated from Mr. Hoyle's proportionality attack.  We consider Mr. Hoyle's arguments, nonetheless.").

In the case of *State v. Cooper*, 172 W. Va. 266, 272, 304 S.E.2d 851, 857 (1983) we indicated that "[t]here are two tests to determine whether a sentence is so disproportionate to a crime that it violates our constitution." (Citation omitted.)  The decision in *Cooper* outlined the two tests as follows:

> The first is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society.  If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further.  When it cannot be said that a sentence shocks the conscience, a disproportionality challenge is guided by the objective test[.]

*Cooper*, 172 W.Va. at 272, 304 S.E.2d at 857.  We will examine the two tests separately below.

**(1) Subjective test**.  The Petitioner argues that his sentence violates the state constitution because it "shocks the conscience and offends fundamental notions of human dignity."  We explained the subjective test of "shocks the conscience" in syllabus point 5 of *Cooper* as follows:

> Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity, thereby violating West Virginia Constitution, Article III, Section 5 that prohibits a penalty that is not proportionate to the character and degree of an offense.

9

Under the subjective test, we must determine whether the sentence imposed on the Petitioner shocks the conscience. "In making the determination of whether a sentence shocks the conscience, we consider all of the circumstances surrounding the offense." *State v. Adams*, 211 W. Va. 231, 233, 565 S.E.2d 353, 355 (2002).

The Petitioner contends that his sentence shocks the conscience because he was originally convicted of a misdemeanor and sentenced to the maximum ninety days in jail, however, as a result of his failure to properly report a Facebook account he "is condemned to spend ten (10) to twenty-five (25) years in the state penitentiary." According to the Petitioner he "is serving a prison sentence forty (40) to one hundred one (101) times longer [than] that of his underlying misdemeanor sex offense." The facts of this case are not as simplistic as the Petitioner suggests in his brief.

Consistent with *Adams*, *supra*, we must look at all of the circumstances surrounding the offense which triggered the challenged sentence. The record shows that Petitioner was originally charged with the felony offense of sexual assault in the third degree, but was permitted to plead guilty to a sexual abuse misdemeanor charge. The Petitioner was subsequently indicted on three separate occasions for failing to comply with the Act's sexual offender reporting requirements. Those three indictments involved a total of eight alleged reporting violations. The Petitioner's conduct in repeatedly failing to comply with the Act's sexual offender reporting requirements makes a mockery of those

10

requirements. If this Court accepted the Petitioner's position on this issue, we would be agreeing with him that the Act's reporting requirements are procedural niceties that sex offenders can selectively comply with. As explained below, we rejected a similarly cavalier view of sexual offender reporting requirements in *Hoyle*.

The defendant in *Hoyle* was indicted on two charges for failing to update his sex offender registry information.[8] The charges involved the defendant's failure to remove a registered phone number that was no longer in service, and his failure to register a phone number (his wife's) that he was using.[9] A jury convicted the defendant of both charges and he was sentenced to ten to twenty-five years in prison.[10] On appeal the defendant argued that the sentence of ten to twenty-five years in prison, for failing to remove a non-used phone number from the registry and failing to register a phone number that was actually being used, was unconstitutional because it shocked the conscience. The defendant argued that such a sentence should not be imposed for a "violation of a regulatory, rather than penal, statute." *Hoyle*, No. 18-0141, 2019 WL 6258349, at *9. We disagreed with the defendant based upon the following:

> The West Virginia Legislature has crafted this significant
> punishment in response to "a compelling and necessary public

---

[8] The defendant's underlying conviction was for sexual assault in the second degree and kidnapping.

[9] The defendant was previously convicted of failing to register as a sex offender.

[10] The defendant also received a life sentence as a recidivist.

11

interest that the public have information concerning persons convicted of sexual offenses in order to allow members of the public to adequately protect themselves and their children from these persons." Both this Court and the Supreme Court of the United States have recognized the importance of protecting the public from sexual offenders, which necessitates the need for harsh deterrent punishments. Finally, because … we afford deference … to the statutory sentences imposed by the Legislature, we cannot find that this sentence is so outrageous as to shock the conscience.

*Hoyle*, No. 18-0141, 2019 WL 6258349, at *9. For the reasons articulated in *Hoyle*, we do not find the Petitioner's sentence shocks the conscience.

**2. Objective test**. The Petitioner next contends that his sentence is disproportionate to his crime of failing to report a Facebook account. We will review this contention under the objective proportionality test set out in syllabus point 5 of *Wanstreet*:

In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

Each of the *Wanstreet* factors will be reviewed separately below.

**(a) Nature of the offense**. The crime for which the Petitioner pled guilty involved his failure to report that he opened a Facebook account as required by W. Va. Code § 15-12-8(c). The Petitioner argues that this was not a crime of violence and that it was merely "a violation of a simple regulatory scheme." We do not agree with the

12

Petitioner's attempt to downgrade the significance of his crime. In its creation of the Act the Legislature expressly noted that it "is intended to be regulatory in nature and not penal." W. Va. Code § 15-12-1a (2000). In spite of the "regulatory" nature of the Petitioner's crime, the Legislature imposed a significant punishment for violators of the reporting requirements. That is, the Legislature did not impose a mere fine for this "simple regulatory scheme." Instead, it imposed significant time in prison for those who failed to comply with reporting requirements.

**(b) Legislative purpose behind the punishment**. The Petitioner "does not dispute the findings of the Legislature … with regards to the purpose of the statute." The Legislature set out the purpose of the Act in W.Va. Code § 15-12-1a, in part, as follows:

> (a) It is the intent of this article to assist law-enforcement agencies' efforts to protect the public from sex offenders by requiring sex offenders to register with the state police detachment in the county where he or she shall reside and by making certain information about sex offenders available to the public as provided in this article. It is not the intent of the Legislature that the information be used to inflict retribution or additional punishment on any person convicted of any offense requiring registration under this article. This article is intended to be regulatory in nature and not penal.
>
> (b) The Legislature finds and declares that there is a compelling and necessary public interest that the public have information concerning persons convicted of sexual offenses in order to allow members of the public to adequately protect themselves and their children from these persons.

It will be noted that under the Act the Legislature imposed a significantly harsher punishment on repeat offenders. The punishment for the first reporting violation is only one to five years imprisonment; while a second or subsequent violation results in a ten to twenty-five-year sentence. *See* W. Va. Code § 15-12-8(c). Consequently, "we can only conclude that the Legislature intended this precise punishment for offenses like [Petitioner's] in order to serve as a deterrent to repeat offenders and to protect the public from those same individuals." *Hoyle*, No. 18-0141, 2019 WL 6258349, at \*10.

**(c) Comparison of the punishment with what would be inflicted in other jurisdictions**. The third *Wanstreet* factor we are called upon to address is that of comparing the Petitioner's sentence with that of punishments that would be imposed in other jurisdictions. The Petitioner has referenced to statutes in several states that he contends impose lesser punishment.[11] We need not reinvent the wheel in resolving this issue. The same argument was raised in *Hoyle*. Consequently, we reject Petitioner's comparison argument for the reasons set out in *Hoyle*:

> Next, we compare the ten-to twenty-five-year sentence under
> § 15-12-8(c) to the corresponding crime in other states.

---

[11] The Petitioner cited to the following jurisdictions: Ky. Rev. Stat. § 17.510(1) (2018) (5 to 10 years); MD. Code Ann, Crim. Proc., § 11-721(b)(1) (2010) (5 years); N.J. Stat. § 2C:43-6(a)(3) (2013) (3 to 5 years); N.Y. Correct. Law § 168-t (2007) (2 to 5 years); Ohio Rev. Code § 2950.99 (2011) (2 to 8 years); Tenn. Code § 40-39-208(e) (2019) (1 year); Va. Code § 18.2-10(e) (2017) (1 to 10 years).

14

> Undoubtedly, many of our sister jurisdictions impose significantly lesser punishments, but other states impose punishments on par with or greater than that embodied in our law. Both Texas and Pennsylvania contemplate maximum twenty-year terms for offenders who repeatedly fail to adhere to their respective sex offender registration acts. Meanwhile, Georgia contemplates a maximum of thirty years incarceration. And, despite a lack of comparable codified penalties, other states have upheld significant sentences for recidivists who fail to properly register as sex offenders. In short, though West Virginia is among those states with the strongest punishments for this crime, we do not find that West Virginia is alone or an anomaly warranting interference with the Legislature's reasoned decision to impose this punishment on offenders[.]

*Hoyle*, No. 18-0141, 2019 WL 6258349, at *10.

**(d) Comparison with other offenses within the same jurisdiction**. The fourth *Wanstreet* factor requires a comparison of other offenses in this State. The Petitioner points out that a person convicted of second degree murder is eligible for parole after the same number of years that he will be eligible for parole. *See* W. Va. Code § 61-2-3 (1994) (10 to 40 years). The Petitioner also points out that a person convicted of second degree sexual assault would face the same punishment that he received. *See* W. Va. Code § 61-8B-4(b) (1991) (10 to 25 years). Finally, the Petitioner argues that a second or subsequent failure to comply with the registration requirements under the Child Abuse and Neglect Registration Act only carries a penalty of 1 to 5 years imprisonment. *See* W. Va. Code § 15-13-7(b) (2006). For the reasons cited in *Hoyle*, we are not persuaded that the state offenses cited by Petitioner show that his sentence is disproportionate.

15

In *Hoyle* the defendant argued that his sentence of ten to twenty-five years was disproportionate to the punishment for state crimes that included sexual assault in the second degree, bank robbery, sexual abuse by a parent, guardian, or custodian, and first degree sexual abuse of a child under the age of twelve by an adult over eighteen. We rejected the defendant's argument as follows:

> We take care to note that, with the exception of bank robbery, each of the above named offenses is of a sexual nature. These are offenses that our Legislature has chosen to punish in the strongest manner to protect the citizens of West Virginia. Few crimes in our state carry a harsher punishment than the one given to Mr. Hoyle, but we note that those crimes tend to be crimes of violence against the person.
>
> When taking the above considerations as a whole, we cannot conclude that a sentence of ten to twenty-five years for second offense failure to register is unconstitutionally disproportionate. We do not deny that the act of failing to update or failing to register is, in itself, a nonviolent crime. But we also cannot deny that the Legislature has expressed a clear and compelling interest in protecting our society from the dangers unregistered sex offenders pose…. Even considering other crimes in our state, our Legislature has evidenced a pattern of imposing significant punishments for sexual offenses, and we cannot ignore that the Act's requirements are part of that scheme. So, we have little trouble concluding that the Legislature's chosen penalty for second offense failure to register under West Virginia Code § 15-12-8(c) meets our standards of constitutional proportionality[.]

*Hoyle*, No. 18-0141, 2019 WL 6258349, at *11.

16

**IV.**

**CONCLUSION**

In view of the foregoing, we affirm the September 28, 2018, order of the circuit court resentencing the Petitioner to not less than ten nor more than twenty-five years in prison.

AFFIRMED.

17