# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**v.) No. 23-458** (Hampshire County CC-14-2017-F-6)

**Brandon James Prazma,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Brandon James Prazma appeals the Circuit Court of Hampshire County's July 11, 2023, order revoking his supervised release. The petitioner claims that the court erred because there was insufficient evidence to prove that he violated the terms of his supervised release, and that the court's revocation sentence of five years' imprisonment is unconstitutionally disproportionate.[1] Upon our review, finding no substantial question of law and no prejudicial error, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21(c).

In 2017, the petitioner pleaded guilty to and was convicted of one count of child abuse resulting in injury and one count of third-offense domestic battery. The circuit court sentenced him to one to five years of imprisonment and fifteen years of supervised release. *See* W. Va. Code § 62-12-26 (providing for extended supervision for certain offenders). The petitioner was released from custody in July 2020 and was placed on supervised release. The terms of his supervised release required him to "maintain behavior that does not threaten the safety of [himself] or others[.]" In June 2023, the State filed a motion to revoke the petitioner's supervised release, alleging that he committed multiple violations including making threats against his ex-girlfriend, H.N.,[2] who filed a petition for a domestic violence emergency protective order against him.[3]

---

[1] The petitioner appears by counsel B. Craig Manford. The State appears by Attorney General John B. McCuskey and Deputy Attorney General Andrea Nease. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel.

[2] We refer to H.N. by her initials to protect the identity of a domestic violence petitioner. *See* W. Va. R. App. P. 40(e).

[3] The petition to revoke supervised release also alleged that the petitioner frequented an establishment that serves alcohol and that he had unsupervised contact with a minor, but ultimately, the circuit court rejected those allegations.

The circuit court heard testimony from several witnesses at the hearing on the motion to revoke the petitioner's supervised release. H.N. testified that on June 5, 2022, the petitioner grabbed her by the throat and choked her for approximately twenty seconds, and he also grabbed her child's head. The State introduced several text messages that H.N. had exchanged with the petitioner, referring to the June 2022 incident. In these messages, H.N. told the petitioner that she did not feel safe around him because he put his hands on both her and her child. In the messages, the petitioner did not deny putting his hands on H.N., but he said that he could change. H.N. further testified that on June 15, 2023, she obtained an emergency protective order against the petitioner after he showed up at her mother's residence and threatened H.N. with "big trouble" if she was involved with another man. The petitioner's probation officer testified that she listened to an audio recording in which the petitioner told H.N., "as long as I am alive, another man will not be in your life." Finally, the petitioner's mother testified that H.N. had told her the petitioner did not attack her or her child during the June 2022 incident, and the petitioner's mother testified that she did not observe any injuries to H.N. immediately after that incident.

At the conclusion of the hearing, the circuit court revoked the petitioner's supervised release, finding clear and convincing evidence that the petitioner had violated the terms and conditions of his supervision by engaging in domestic violence against H.N. On July 11, 2023, the court entered an order revoking the petitioner's supervised release and imposing a term of five years' imprisonment.[4]

On appeal, the petitioner challenges the circuit court's decision to revoke his supervised release. He argues that the State did not present clear and convincing evidence to support the revocation. When this Court reviews such an order, we review the circuit court's final order for abuse of discretion, findings of fact for clear error, and questions of law are considered de novo. *See* Syl. Pt. 1, *State v. White*, 249 W. Va. 532, 896 S.E.2d 698 (2023).

Although H.N. testified that the petitioner attacked her and her child during the June 2022 incident, and the State presented text messages that corroborated her testimony, the petitioner argues that H.N.'s testimony about the petitioner's violent conduct toward her and her child in June 2022 was "sufficiently rebutted" by his mother's testimony. Regarding the June 2023 incident, the petitioner argues that he did not threaten H.N. when he stated that "another man would not be in her life[,]" and he denies acting in a threatening manner when he confronted H.N. in June 2023. In essence, the petitioner argues that H.N. and his probation officer were incredible witnesses, and the circuit court should have based its findings on his mother's testimony. However, this Court "give[s] deference to the factual findings of the circuit court when the findings are based on the credibility of witnesses[,]" *White* at 543, 896 S.E.2d at 709 (citation omitted), and in this case, the circuit court expressly found H.N.'s testimony to be credible. In sum, the petitioner fails to demonstrate that the circuit court's factual findings were clearly erroneous, and we conclude that the court did not err when it revoked his supervised release.

---

[4] *See* W. Va. Code § 62-12-26(h)(3) (providing that a circuit court may revoke a term of supervised release if it finds "clear and convincing evidence that the defendant violated a condition of supervised release").

Next, the petitioner argues that his revocation sentence of five years imprisonment is unconstitutionally disproportionate under the facts of this case. The petitioner asserts that the length of the court's revocation sentence was excessive and disproportionate to the nature of his supervised release violations. He contends that five years is too long.

> When reviewing an order modifying or revoking a defendant's supervised release under West Virginia Code § 62-12-26(h), we apply a three-pronged standard of review. We review the circuit court's final order and decision to modify or revoke a defendant's supervised release under an abuse of discretion standard; we review challenges to findings of fact under a clearly erroneous standard; and we review questions of law and interpretations of statutes de novo.

Syl. Pt. 1, *State v. White*, 249 W. Va. 532, 896 S.E.2d 698 (2023).

Similarly, we review "sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997). "Where the issue involves the application of constitutional protections, our review is de novo." *State v. Patrick C.*, 243 W. Va. 258, 261, 843 S.E.2d 510, 513 (2020) (citations omitted). Furthermore, "Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of the offence.'" Syl. Pt. 8, *State v. Vance*, 164 W. Va. 216, 262 S.E.2d 423 (1980). We ordinarily limit proportionality reviews to sentences "where there is either no fixed maximum set by statute or where there is a life recidivist sentence." Syl. Pt. 4, in part, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981). However, we often review supervised release sentences for proportionality. *See, e.g.*, *State v. Brautigam*, ___ W. Va. ___, ___, 922 S.E.2d 764, 770 (2025).

Like our other proportionality reviews, we apply two tests to evaluate the proportionality of a sentence issued upon the revocation of supervised release. *Id.* at ___, 922 S.E.2d at 770-71. "The first is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further." *State v. Cooper*, 172 W. Va. 266, 272, 304 S.E.2d 851, 857 (1983). The second is an objective inquiry, requiring us to give consideration "to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction." *Id.* (quoting *Wanstreet*, 166 W. Va. at 523-24, 276 S.E.2d at 207, Syl. Pt. 5, in part). When considering these two tests, we bear in mind the relation of the purposes of supervised release—including rehabilitation, conditional liberty, and the protection of society—to the corresponding breach of the court's trust by a defendant and the resulting revocation term of imprisonment. *See Brautigam*, ___ W. Va. at ___, 922 S.E.2d at 771-72 (discussing the purposes of supervised release). And, when considering the purposes of supervised release, alongside the petitioner's actions while on supervised release, here we find that the circuit court's sentence of imprisonment resulting from the petition for revocation was not disproportionate under either test.

3

For the subjective test, this Court examines whether the sentence is "so disproportionate to the crime" that "it shocks the conscience and offends fundamental notions of human dignity" compared to the "character and degree of an offense." *Cooper*, 172 W. Va. at 267-68, 304 S.E.2d at 852, Syl. Pt. 5, in part. Here, the petitioner's revocation sentence does not shock the conscience. Following his original conviction for child abuse resulting in injury and third-offense domestic battery, which gave rise to his term of supervised release, the petitioner grabbed a minor child by the head, and when H.N. tried to intervene, the petitioner choked her, pushed her, and hit her. The petitioner also threatened H.N., for which H.N. was granted an emergency protective order. These incidents fail to "demonstrate [the petitioner's] ability to rehabilitate and safely reenter society"; to the contrary, the petitioner's actions "demonstrate his continued inability to conform his behavior on supervised release to the circuit court's requirements." *See Brautigam*, ___ W. Va. at ____, 922 S.E.2d at 773.

To determine whether a sentence is objectively disproportionate, we consider the "nature of the offense" and "the legislative purpose behind the punishment," and compare the punishment "with what would be inflicted in other jurisdictions," and "with other offenses within the same jurisdiction." *Wanstreet*, 166 W. Va. at 523-24, 276 S.E.2d at 207, Syl. Pt. 5, in part. The petitioner fails to discuss the legislative purpose behind the punishment or compare his sentence with supervised release revocation sentences imposed in other jurisdictions. *See* W. Va. R. App. P. 10(c)(7) (providing that "[t]he brief must contain an argument clearly exhibiting the points of fact and law presented . . . and citing the authorities relied on, under headings that correspond with the assignment of error."). However, applying the *Wanstreet* factors here, we consider the defendant's violations of the terms and conditions of supervised release and corresponding breach of the court's trust when evaluating the resulting revocation sentence. *See Brautigam*, ___ W. Va. at ___, 922 S.E.2d at 773-74. The petitioner's noncompliance with the conditions of supervised release is analogous to other cases in which we affirmed similar or longer terms of imprisonment upon revocation after breaching the court's trust. *See State v. Hargus*, 232 W. Va. 735, 743, 735 S.E.2d 893, 901 (2013) (affirming a five-year sentence following a supervised release revocation); *State v. Raymond B.*, No. 20-0605, 2021 WL 2580715, at *4-5 (W. Va. June 23, 2021) (memorandum decision) (affirming a fifteen-year sentence following supervised release revocation). Considering the purpose of supervised release and other revocation sentences in West Virginia, the petitioner's sentence was not objectively disproportionate. Therefore, we find that the circuit court did not abuse its discretion when sentencing him to a five-year term of imprisonment upon the revocation of his supervised release.

For the reasons stated, we affirm.

Affirmed.

**ISSUED:** March 24, 2026

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

4